# WILLIAM B. LITCH

## v.

## EDWARD S. CLINCH et al.

*Filed at Ottawa January 22, 1891.*

1. CHANCERY—*pleading and evidence.* In chancery, a matter not expressly admitted by the answer is not admitted at all, but the rule is, that a matter which is neither admitted nor denied by the answer must be substantiated by proof.

2. JURISDICTION—*as to courts in another State—presumption.* Where the duly authenticated transcript of the proceedings and judgment of the Marine Court of the city of New York shows that such court is one of the courts of record of the State of New York having superior jurisdiction, it will be presumed, in the absence of anything tending to a contrary conclusion, that by the laws of that State such court had jurisdiction of the subject matter involved in such proceedings and judgment.

3. SET-OFF—*in equity—unliquidated demand—not germane.* An unliquidated demand growing out of a matter not germane to the subject of litigation can not be applied in extinguishment of a mortgage sought to be foreclosed, when there are no equitable circumstances shown to have such claim applied as an equitable set-off.

4. SAME—*what may be the subject of set-off—generally.* A set-off or counter-claim can be pleaded only when there is an indebtedness from the plaintiff to the defendant which might be made the subject of an independent suit, and the filing of a plea of set-off is tantamount to the institution of a cross-action by the defendant against the plaintiff in the same proceeding.

5. SAME—*set-off and payment—the distinction.* One material difference between set-off and payment as a defense is, that it is optional with the defendant to plead his set-off in defense or make it the subject of an independent suit, while, ordinarily, at least, the defense of payment must be presented and litigated in the suit brought to recover the indebtedness alleged to have been paid, or it will be barred and lost.

6. FORMER ADJUDICATION—*as to what matters conclusive.* Where a matter becomes the subject of litigation, the law requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject in contest, but was not brought forward only

because they have, from negligence, inadvertence, or even accident, omitted a part of their case.

7. A party, when sued, filed his plea of payment, but on the trial of the cause failed to appear and introduce any evidence in support of his defense, and judgment was rendered against him for the debt: *Held*, that such judgment was conclusive upon his right afterward to litigate the question of payment, and swept away every defense he had to the plaintiff's claim for the purposes of any subsequent suit, whether founded on the same or a different cause of action. The defense of set-off, when not presented and tried, constitutes an exception to the rule.

8. LIMITATIONS — *as to mortgage debt — arrest of the running of the statute.* The filing of a cross-bill in a suit for foreclosure, for the cancellation of the mortgage, will arrest the running of the Statute of Limitations, and so will a recovery of a judgment at law by the holder of the mortgage against the mortgagor arrest the running of the statute, and it will thereafter begin to run only from the date of the judgment.

9. WITNESS—*competency—party—against executors.* A party to a suit in chancery is not a competent witness in his own behalf, when the opposite parties, and the only opposite parties having any interest in the litigation, are defending as executors.

10. PARTITION — *all rights to be determined.* Where a cross-bill is filed in a proceeding for the partition of land, both complainant and defendant are actors, and it may become the duty of the court, in order to give the relief prayed in the original bill, to examine and determine the rights of all persons interested in the premises sought to be partitioned.

11. SAME—*relief on cross-bill.* On bill for the partition of land, one of the defendants alleged in his cross-bill that a conveyance by him of his interest in the land was given as a mortgage to secure a debt, and that the debt had been paid in full, and prayed for a cancellation of the mortgage, and that his rights in the land be found and declared: *Held*, that these allegations authorized the court to find, not only that the deed was a mortgage, but also to find whether the debt had been paid, and if not, to ascertain the amount remaining due.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Ogle county; the Hon. WILLIAM BROWN, Judge, presiding.

The original bill in this case was filed April 17, 1879, and was brought by George H. Litch against William B. Litch, Edward S. Clinch, George W. Platt, Nancy Wilbur and others, for the partition of the south-east quarter of section 21, town-

ship 41, north, of range 2, east of the 3d principal meridian, in the county of Ogle. The bill alleges, among other things, that in 1870, Samuel T. Litch, who was then the owner in fee of said quarter section of land, died intestate, leaving William B. Litch, Manassas Litch and the complainant his three brothers, and his sister Anna C. Hobert, his only heirs at law; that the complainant afterward obtained by purchase the interests of his brother Manassas Litch and his sister Anna C. Hobert in said land, thus becoming the owner of an undivided three-fourths thereof; that as to the remaining one-fourth interest in said land, said Clinch claims to have acquired title thereto by deed from said William B. Litch, and that said Platt claims to have acquired title thereto by deed from said Clinch, and that said Nancy Wilbur is attempting to assert a right to the possession of said tract of land, which right she claims to have derived in some manner from some one of said parties; that the complainant can not say who is the rightful owner of said undivided one-fourth of said land, but he believes that said William B. Litch is yet the owner thereof in fact. The bill prays that the interests of said parties in said land be ascertained and declared, and that partition be made between the parties entitled thereto according to their respective rights.

Defendant Platt answered claiming title in fee in himself to the entire tract. William B. Litch also answered the bill and filed a cross-bill, alleging that on the 23d day of September, 1873, he was indebted to Clinch and Platt in the sum of $1100, and that to secure said indebtedness, he executed to Clinch a quitclaim deed of the tract of land described in the original bill, and also of a house, lot and office in Ballston Spa, New York; that on the same day Clinch conveyed said land to Platt, and in April, 1875, he conveyed said house, lot and office to said Nancy Wilbur; that about December, 1872, said Clinch and Platt contracted an inchoate indebtedness to said William B. Litch for $6813.88, and interest in this man-

ner: Litch at that time was prosecuting a suit in the Superior Court of Boston, Massachusetts, against the estate of Martha B. Carnes, for the collection of a bill of costs for legal services, amounting to said sum of $6813.88, and in said suit there had accumulated various papers, and among them a "proved bill of costs" for the above sum. Clinch and Platt were at the same time engaged in a litigation in the city of New York for the recovery of certain real estate of the value of $30,000, and desired to use the papers belonging to Litch's Boston suit in the prosecution of their New York litigation. They thereupon entered into a contract with him by the terms of which he was to abandon his Boston suit and turn his papers, including said "proved bill of costs," over to them, to be used as above stated. There is no express allegation as to the consideration Clinch and Platt agreed to pay for the use of said papers, but an inference may perhaps arise from the entire statement that, in case of a successful issue of the New York litigation, they were to pay Litch the amount of the fee bill he was seeking to collect from the Carnes estate with interest. Said cross-bill further alleges that, in pursuance of said contract Clinch and Platt had possession of said papers and used them in their suit down to March, 1881, when Platt died, and that after his death, his widow, heirs and executors retained possession of said papers and used them in their suit until December, 1881, at which time their litigation was finally and successfully terminated, and that they then returned said papers to Litch; that by means of the premises Clinch and the estate of Platt became absolutely liable to pay to Litch the amount of said fee bill and interest, and that he thereupon turned over and appropriated a sufficient amount of said indebtedness to extinguish his indebtedness to Clinch and the Platt estate, and he asks for a decree in his favor for the residue.

Said cross-bill further alleges that in April, 1875, Clinch and Platt appropriated said Ballston Spa property, being of

the value of about $1000, to their own use, by conveying it to Nancy Wilbur, and prays to have the value of that property charged against Clinch and the Platt estate. It also alleges that in 1881, Litch was in the city of New York, and that while he was there, Clinch caused him to be sued by Platt's executors in the Marine Court of the city of New York for the identical indebtedness to secure which he conveyed his interest in the Ogle county land and the Ballston Spa property to Clinch; that he served his answer in said suit in due time, and employed an attorney resident in New York to defend said suit, he being then a resident of Rochelle, Illinois. It is further alleged that on the 16th day of February, 1882, the plaintiffs in said suit obtained a judgment therein against Litch for about $1500 no one appearing for him in said court, and it is charged on information and belief, that said judgment was obtained by means of a corrupt and fraudulent collusion and conspiracy between Clinch and the attorney employed by Litch, to mislead and deceive Litch and to prevent his attending the trial and presenting his defense; that he knew nothing of said cause having been noticed for trial or of said judgment having been rendered, until after August 25, 1882, when a suit at law thereon was commenced against him in the Circuit Court of Ogle county, Illinois.

The cross-bill prays, among other things, that said suit at law be enjoined; that an accounting be had between Litch, Clinch and the estate of Platt; that the conveyance by Litch to Clinch of the land described in the original bill, and also the conveyance thereof from Clinch to Platt, be cancelled, and the rights and interest of Litch in said land be ascertained and declared.

The heirs and executors of Platt, in their answer to the cross-bill, admit that Platt died testate in 1881. They deny that Litch, the complainant in the cross-bill, has any interest in the land in question, or that the deed by which he conveyed his interest therein was given as security for any indebtedness,

but allege that said conveyance was intended to be absolute as it purports to be. They admit that Clinch for Platt, and said Platt, had the use of certain letters and papers belonging to Litch, but deny that there was any agreement or understanding that they should pay him for the use of the same, but they allege that for such use, and in full satisfaction of any claim on the part of Litch therefor, Platt paid Litch $500. They allege that the judgment against Litch in the Marine Court of the city of New York was regularly obtained on personal service of summons and for an actual indebtedness due from Litch to the estate of Platt; that Litch appeared in said suit by his attorney and filed his pleas, and that nothing was said or done by the attorney of said defendants to induce Litch to abandon his defense of said suit, and that said judgment is still wholly due and unpaid. They deny all indebtedness whatever to said Litch, and allege that Litch had no defense to said suit at law.

Defendant Clinch was defaulted for want of an answer, and on the 6th day of April, 1886, a hearing was had and a decree entered finding that the complainant in the original bill was the owner in fee of an undivided three-fourths of the premises described in that bill, and was entitled to a partition thereof; that the complainant in the cross-bill was the owner in fee of the remaining undivided one-fourth interest in said land, subject to such mortgage rights, if any, as the legal representatives of said Platt might have therein, and it was thereupon ordered that the cross-bill stand for further hearing as to the rights of said legal representatives and of said Clinch in said undivided one-fourth of said land, and as to the rights and claims of the complainant in the cross-bill against said legal representatives and against said Clinch.

On the 22d day of October, 1889, a hearing was had on the cross-bill and a final decree rendered, finding that the quit-claim deed from Litch to Clinch dated September 23, 1873, was executed by way of mortgage to secure an indebtedness

from Litch to Clinch of $1150 and an unascertained amount of interest thereon; that on the same day and before executing the deed to Platt, Clinch executed under his hand and seal, acknowledged and delivered to Litch a defeasance, providing that upon the payment of said indebtedness, Clinch would quit-claim to Litch all the interest in said land in Ogle county acquired by him through said quit-claim deed, and all the interest conveyed to him by Litch in said Ballston Spa property, it being recited in said defeasance that the Ballston Spa property also was conveyed to him as security for said indebtedness. The decree further finds that Clinch conveyed to Platt only his mortgage interest in said premises, and that Litch is the owner in fee of the undivided one-fourth of the land described in the original bill, subject to the mortgage interest therein of the legal representatives of Platt.

The decree further finds that, on the 9th day of December, 1881, the executors of Platt brought suit against Litch in the Marine Court of the city of New York, a court of record and of general jurisdiction, for the recovery of the same indebtedness mentioned in said defeasance, and that Litch, having been personally served with summons, appeared in said suit by his attorney and filed his answer, setting up, among other things, an appropriation by Platt in his lifetime of said Ballston Spa property to the payment of said mortgage indebtedness, and that thereby, and by the receipt by Platt of the rents and profits of the land mentioned in the original bill, said mortgage indebtedness had been paid and extinguished; that the plaintiffs in said suit filed a general denial of said answer; that afterwards, on the 16th day of January, 1882, notice was personally served on Litch's attorney that said suit would be brought on for trial on the 6th day of February, 1882, and an inquest taken therein, such notice of trial and inquest being in all respects as required by the laws of the State of New York; that such proceedings were thereafter had in said suit in said Marine Court, that on the 16th day of February, 1882,

the plaintiffs in said suit recovered a judgment against said Litch for $1355.52 damages and $144.70 costs; that the indebtedness for which said judgment was recovered was the same mentioned in said defeasance, and that said judgment was obtained fairly and without fraud or evil practice on the part of the plaintiffs therein or any other person, and that no steps have ever been taken in any of the courts of the State of New York, by motion, appeal, writ of error or otherwise, to have said judgment reversed, vacated or set aside, and that said judgment remains in full force and effect, and wholly unpaid and unsatisfied, and is entitled to full faith and credit.

The decree further finds that the claim set up by Litch in his cross-bill that the indebtedness mentioned in the defeasance was paid, satisfied and extinguished by the appropriation by Platt of the Ballston Spa property, and by the rents and profits of the land described in the original bill, was set up in his answer filed in the suit in the Marine Court, and was not withdrawn from the consideration of that court, and that the judgment of that court, upon that defense is *res judicata* and conclusive. As to the attempt made by the cross-bill to set off against the mortgage indebtedness the indebtedness arising under the alleged contract in relation to the use of Litch's papers in his Boston suit, the decree finds that said contract, if made, was made by Clinch, who was acting merely as attorney for Platt, and that he had no authority to bind his client by such contract, and said contract is not shown to have been communicated to or ratified by Platt. Also that said claim is not germane to the matters set up in the original bill, and no agreement to set it off against the mortgage indebtedness being shown, such set-off can not be allowed.

The decree further finds that Litch is not a competent witness in his own behalf, for the reason that the adverse parties defend in the capacity of executors of the last will of said Platt; that the indebtedness mentioned in said defeasance was owing from Litch to Platt and not to Clinch and Platt either jointly

27—136 ILL.

or as partners, but that Clinch acted throughout merely as attorney for Platt, and had no other interest.

The decree ordered that the injunction restraining the prosecution of the suit at law brought upon said judgment of the Marine Court be dissolved, and that said cross-bill be dismissed for want of equity. It found that there is due to Platt's executors upon the indebtedness mentioned in said defeasance the amount of the damages recovered in the Marine Court and interest thereon from the date of said judgment, and that said executors have a mortgage lien on the undivided one-fourth of the premises described in the original bill to secure the payment thereof.

Said Litch prayed for and obtained an appeal from said decree, which, by agreement of the parties, was taken to the Appellate Court of the First District. By the judgment of that court the decree was affirmed, and from said judgment of affirmance said Litch has appealed to this court.

Mr. William B. Litch, *pro se:*

The answer to the cross-bill admits all the material allegations of the bill to be true. They are not only not denied, but are affirmatively admitted.

The taking of an absolute conveyance, and attempting to assert it as such when it is but a mere security, is a fraud, and will estop the holder from claiming as a *bona fide* mortgagee. *Metropolitan Bank* v. *Godfrey*, 23 Ill. 579.

William B. Litch was a competent witness, as the party was not dead, while his partner survived.

Insolvency of a party against whom an equitable set-off is claimed, has been held sufficient ground for the exercise of equitable jurisdiction, and non-residence has been held equivalent to insolvency. *Robbins* v. *Hawley*, 1 Mon. 194.

As to the claim of *res judicata*, see *Dorsey* v. *Gosaway*, 2 Har. & J. 406; *Lyon* v. *Talmadge*, 14 Johns. 501; *Gray* v. *Gillilan*, 15 Ill. 453.

Appellees ask affirmative relief on an answer that does not ask it. They can not have affirmative relief on an answer if they did not ask it. They should file their cross-bill. *Purdy* v. *Henslee,* 97 Ill. 389.

Mr. D. D. O'Brien, for the appellees:

When a matter is neither admitted nor denied by the answer, it must be proved. *DeWolf* v. *Long,* 2 Gilm. 682.

No advantage can be taken of the omission of the defendant to answer fully, unless exceptions are filed. *DeWolf* v. *Long,* 2 Gilm. 682; *Wilson* v. *Kinney,* 14 Ill. 28; *Trenchard* v. *Warner,* 18 id. 144; *Kitchell* v. *Burgwin,* 21 id. 44.

A party may set up an absolute conveyance as a purchase, but if the evidence shows his intent to be that of a mortgagee only, he is not estopped from claiming a mortgage interest. *Tillson* v. *Moulton,* 23 Ill. 648; Jones on Mortgages, chap. 8, secs. 282, 342.

The bringing of a suit on the debt secured, arrests the Statute of Limitations. *Emory* v. *Keighan,* 88 Ill. 489.

A change in the form of the debt does not satisfy a mortgage given to secure it. *Flower* v. *Elwood,* 66 Ill. 446; *Priest* v. *Wheelock,* 58 id. 114; *Wayman* v. *Cochrane,* 35 id. 155; 2 Jones on Mortgages, secs. 924, 930.

The Statute of Limitations must be pleaded in equity. *School Trustees* v. *Wright,* 12 Ill. 441; *Borders* v. *Murphy,* 78 id. 87; *Zeigler* v. *Hughes,* 55 id. 301; *Stubblefield* v. *Borders,* 92 id. 287.

William B. Litch is not a competent witness. *Apperson* v. *Gogin,* 3 Bradw. 54; *Berdan* v. *Allan,* 10 id. 102; *Whitmer* v. *Rucker,* 71 Ill. 412; *Alexander* v. *Hoffman,* 70 id. 114; *Comer* v. *Comer,* 119 id. 170; *Walsh* v. *Wright,* 101 id. 182; *Hurlbut* v. *Meeker,* 104 id. 542.

On the question of *res judicata,* see Freeman on Judgments, secs. 272, 276; Bigelow on Estoppel, (2d ed.) 96; *Harmon* v. *Auditor,* 123 Ill. 122.

All questions presented by the pleadings, and that might have been determined, are *res judicata,* whether evidence was introduced concerning them or not, and parol evidence is inadmissible to show that they were not determined, or that no evidence was offered concerning them. *Gray* v. *Gillilan,* 15 Ill. 453; *Harmon* v. *Auditor,* 123 id. 122; *Hess* v. *Heeble,* 6 S. & R. 58; *Bisbee* v. *Woodbury,* 8 Bradw. 336; *Briscoe* v. *Lloyd,* 64 Ill. 36; *Gaddis* v. *Leeson,* 55 id. 525; *Rogers* v. *Higgins,* 57 id. 247; *Ruegger* v. *Railroad Co.* 103 id. 456; *Bailey* v. *Bailey,* 115 id. 557; *Shunick* v. *Thompson,* 25 Ill. App. 623; *Vanlandingham* v. *Ryan,* 17 Ill. 28; *Rae* v. *Hulbert,* 17 id. 577; *Barker* v. *Elkins,* 1 Johns. Ch. 465.

To avoid the effect of *res judicata* as to questions presented by the pleadings, the claim or defense must be expressly withdrawn before final judgment. Bigelow on Estoppel, 41, 42; *Eastman* v. *Laws,* Bing. 444; *Barger* v. *Hobbs,* 67 Ill. 595; Freeman on Judgments, secs. 219, 272.

The effect of the Marine Court judgment is sought to be avoided on the ground of fraud in its procurement. The evidence falls far short of sustaining the charge of fraud. *Rae* v. *Hulbert,* 17 Ill. 572; *Boyden* v. *Reed,* 55 id. 464; *Fahs* v. *Darling,* 82 id. 143.

A judgment can not be attacked for fraud in a collateral action, but only in a direct proceeding in the court in which it is rendered, by motion or by bill in chancery. This is the rule as to parties to the suit. Creditors and third persons may, of course, attack a judgment for fraud in a collateral proceeding. Bigelow on Estoppel, 133-139; *Anderson* v. *Anderson,* 8 Ohio, 108; *McRae* v. *Mattoon,* 13 Pick. 53; *Christmas* v. *Russell,* 5 Wall. 290; *Railroad Co.* v. *Sparhawk,* 1 Allen, 448; *Kirby* v. *Fitzgerald,* 31 N. Y. 417; *Hammon* v. *Wilder,* 25 Vt. 342.

Bigelow, in his work on Estoppel, (135,) says that the question was not raised in *Field* v. *Flanders,* 40 Ill. 470, and that the language in the opinion, "while a judgment is conclusive

upon parties and privies, and can not be impeached, still, in equity, it may be vacated and set aside where it has been procured by collusion," refers to a direct and not to a collateral proceeding. (See, also, Freeman on Judgments, secs. 334, 336, 337, 577.) In our State, even foreign judgments are equally conclusive with the judgments of sister States. *Baker* v. *Palmer*, 83 Ill. 568; *Roth* v. *Roth*, 104 id. 47.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The appellant insisted in the Appellate Court and insists with greater strenuousness here, that most of the material allegations of the cross-bill are either expressly or impliedly admitted by the answer to said bill, and that upon the facts thus admitted the decree can not be sustained. The admissions insisted upon are sought to be derived from the failure of the defendants to respond in their answer to certain allegations of the cross-bill, but chiefly from what the appellant conceives to be an express admission made by the concluding clause of the answer, usually known as the *absque hoc* clause.

It is not true, in proceedings in chancery, that what is not expressly denied is to be taken as admitted, the rule being, that a matter which is neither admitted nor denied by the answer must be substantiated by proof. *DeWolf* v. *Long*, 2 Gilm. 679; *Trenchard* v. *Warner*, 18 Ill. 142. Nor is the appellant correct in his supposition that the concluding clause of the answer constitutes an express admission of the allegations of the bill not denied by the answer, it being in fact a technical *traverse* of all matters in the bill not well and sufficiently answered unto, confessed and avoided, traversed or denied, and is in no sense an admission of those matters. Anderson's Law Dictionary, Title "Traverse;" Gould's Pleadings, 350; Mitford's Equity Pleadings, 406.

It is a matter about which no controversy can arise on this appeal, that the conveyance by Litch to. Clinch of the interest

which the latter had in the land described in the original bill, and of the property at Ballston Spa, New York, though absolute in form, was in fact intended as a mortgage to secure certain indebtedness from Litch, part of which was owing to Clinch and part to Platt. That said property was conveyed only by way of mortgage is alleged in the cross-bill, and although the contrary was asserted by Platt, and after his death by his representatives, in their answers, the true nature of the transaction is established beyond controversy both by the oral testimony and by the written defeasance executed by Clinch at the time of the conveyance, and the decree of the court, to which the representatives of Platt are now taking no exception, having found that the conveyance was a mortgage, no dispute as to that proposition remains in the case.

It is also settled, both by the stipulation of the parties and by findings of the decree to which neither party is now taking exception, that the indebtedness for which said mortgage was given is the same for which the suit was brought and the judgment recovered by the executors of Platt against Litch in the Marine Court of the city of New York. Whether a portion of said indebtedness was originally held by Clinch in his own right, as the recitals of said defeasance would seem to indicate, or whether he held the portion then owing to him as trustee or attorney for Platt, it can not now be questioned that at the time of the commencement of the suit in the Marine Court and at the time of the recovery of the judgment therein, all of said indebtedness belonged and was due and owing to the executors of Platt.

Litch is seeking, by his cross-bill, to defeat the lien of the mortgagees by showing, 1. that the mortgage debt has been paid; 2. that the mortgage lien is barred by the Statute of Limitations; and, 3. that there is a claim existing in his favor against the estate of Platt, larger in amount than the mortgage lien, which ought to be applied as an equitable set-off to the extinguishment of the mortgage.

In determining the first of these propositions it becomes
material to consider how far the judgment of the Marine
Court is binding upon Litch as an estoppel. Upon the showing
made by the record before us, it must be regarded as conclu-
sively established that said court had jurisdiction both of the
subject matter of the suit and of the persons of the parties.
The duly authenticated transcript of said proceedings and
judgment are entitled to full faith and credit here, and it ap-
pears from such transcript that the Marine Court of the city
of New York is one of the courts of record of the State of New
York having superior jurisdiction, and it must therefore be
presumed, as there is nothing before us tending to a contrary
conclusion, that, by the laws of that State, that court had
jurisdiction of the subject matter of said suit. Jurisdiction
of the person of Litch, the defendant, was obtained by due
service of summons on him and by his voluntary appearance
by his duly authorized attorney.

The complaint filed by the plaintiffs in said suit alleged the
indebtedness in question, said indebtedness being evidenced
by three promissory notes therein described, and demanded
judgment against Litch for the amount of said indebtedness
and costs. The defense set up by Litch's answer was *payment,*
and not a set-off or counter-claim as seems to be supposed.
Said answer, after alleging the conveyances by which the land
in question in this suit and the Ballston Spa property had
become vested in Platt as mortgagee, further alleges that Platt
sold, conveyed and appropriated the Ballston Spa property
in payment and extinguishment of said indebtedness, and
also that he received certain rents arising from said land,
"which was in full satisfaction of the notes mentioned in the
complaint." It can not for a moment be supposed, if the alle-
gations of said answer were true, that is, if the indebtedness
sued for had been paid and extinguished by the rents received
and an appropriation of a portion of the mortgaged property,
Platt thereby became Litch's debtor for the amount of rents

received and the value of the property appropriated. The payment of a debt simply extinguishes the obligation of the debtor, but raises no obligation on the part of the creditor to refund the money thus paid.

A set-off or counter-claim, at least in the sense in which those words are understood in this State, can be pleaded only where there is an indebtedness from the plaintiff to the defendant which might be made the subject of an independent suit, and filing a plea of set-off is tantamount to the institution of a cross-action by the defendant against the plaintiff in the same proceeding. One material difference between set-off and payment as a defense is, that it is optional with the defendant to plead his set-off as a defense or make it the subject of an independent suit, while, ordinarily at least, the defense of payment must be presented and litigated in the suit brought to recover the indebtedness alleged to have been paid or it will be barred and lost.

It appears that when the suit in the Marine Court was called for trial Litch was not present, nor was there any attorney in attendance to answer for him, and the trial was accordingly had and the judgment rendered against him in his absence, and without his having an opportunity to establish his defense by proof. The transcript of the proceedings may, we think, be regarded as showing affirmatively that no evidence was offered or heard in support of the defendant's answer.

It may be observed here in passing, that none of the charges made by Litch in his cross-bill of fraudulent collusion and conspiracy between the attorney retained by him and Clinch, acting as the attorney for Platt's executors, to mislead and deceive Litch and prevent his attending the trial and presenting his defense, are sustained by the evidence, and they therefore must be dismissed without further comment. So far as appears, no undue advantage was taken of Litch, but the judgment seems to have been rendered against him in due

course according to the practice of the court in which the suit was pending.

The question then is, whether said judgment, recovered, as it was, in the defendant's absence, no evidence being offered by him or in his behalf, must be held to be *res judicata* as to the defense of payment set up in his answer. The general doctrine on this subject is stated by the Vice Chancellor in *Henderson* v. *Henderson*, 3 Hare, 115, as follows: "In trying this question I believe I state the rule of the court correctly, that where a given matter becomes the subject matter of litigation in, and of adjudication by, a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res judicata* applies not only to the point upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising a reasonable diligence, might have brought forward in time." The foregoing language is quoted by the Supreme Court of the United States as a proper statement of the established doctrine of *res judicata,* in *Beloit* v. *Morgan,* 7 Wall. 617.

This court has repeatedly announced the same rule. Thus, in *Bennitt* v. *Star Mining Co.* 119 Ill. 9, it is said: "The doctrine of *res judicata* embraces not only what has actually been determined in the former suit, but also extends to any other matter properly involved, and which might have been raised and determined in it." In the same case, as also in *Kelly* v. *Donlin,* 70 Ill. 378, the following statement from a note in Bigelow on Estoppel is quoted with approval: "It follows, also, from the authorities considered, that a valid judgment for

the plaintiff, sweeps away every defense that could have been raised against the action; and this, too, for the purposes of every subsequent suit, whether founded on the same or a different cause." See also, *Riverside Co.* v. *Townshend*, 120 Ill. 9; *Harmon* v. *Auditor of Public Accounts*, 123 id. 122; *Neff* v. *Smyth*, 111 id. 100; *Town of Lyons* v. *Cooledge*, 89 id. 529; *Hamilton* v. *Quimby*, 46 id. 90; *Rogers* v. *Higgins*, 57 id. 244.

It may be admitted that the defense of set-off, which a party is not bound to litigate in a pending suit, constitutes an exception to the general rule. If he does not see fit to insist upon his set-off as a defense, he will not be precluded from afterward bringing a separate suit upon it. And even if the set-off should be pleaded, and no testimony is given in support of it and it is not submitted to the court or jury, it may be that the mere pleading of the set-off might be so far regarded as in the nature of bringing a cross-action as to place the defendant, so far as such cross-action is concerned, in the position of any other plaintiff whose suit is discontinued or dismissed for want of prosecution. But if the claim or defense is one which the party is bound to present and litigate in the pending suit, the rule is imperative that it should be submitted or it will be concluded by the judgment. Wells on Res Adjudicata, sec. 250.

That the defense of payment is of the latter class can not well admit of doubt. Payment works an extinguishment or obliteration of the indebtedness paid, and a judgment which establishes the existence of the debt directly and necessarily negatives the fact of payment.

There are some decisions, it is true, which hold that under certain circumstances, where a debtor has made payments and the creditor takes judgment for the entire debt without applying such payments, the debtor may, in a subsequent suit, recover back the money paid. Thus, in *Smith* v. *Weeks*, 26 Barb. 463, a plaintiff obtained judgment for the full amount of his debt without giving credit for certain payments made thereon

by the defendant, and the defendant was allowed to recover back the payments thus made in a separate action, on the ground that the creditor having received the money in trust and confidence to apply it in a specific manner, and having failed to do so, it was inequitable that he should retain it; that the debtor had a right to expect his creditor to perform his duty, and that when he came to take judgment for his debt, he would credit the payments made, and that to hold that the debtor was bound to appear in the action and employ counsel at his own expense, merely to see that his creditor did what he had agreed to do, would be unreasonable. Much the same rule was announced in Massachusetts and New Hampshire in *Rowe* v. *Smith*, 16 Mass. 307, and *Snow* v. *Prescott*, 12 N. H. 535, but it has been repudiated in New York in the later case of *Binck* v. *Wood*, 43 Barb. 315, in which the contrary view is held, and in which it is pertinently remarked: "The justice that conflicts with well settled principles of law, settled and declared by enlightened men from broad views of public welfare, may be regarded as of a very doubtful character. It is usually the offspring of negligence and the parent of bad law."

But whether the rule which the decisions above cited would seem to establish is good law or not, it manifestly can not apply to this case, as there was certainly no relation of trust or confidence between the parties, the defendant having appeared and filed his answer in which he pleaded his alleged payments and the plaintiffs having filed their reply in which they had absolutely denied that any such payments had been made. The defendant was thus put upon notice that his alleged defense was repudiated and would be contested, and he was therefore placed, in the strictest sense of the word, at arms length with the plaintiffs, and it was therefore incumbent upon him to see to it that his rights were properly protected in court, or suffer the consequences of his own neglect. It seems to us therefore to be entirely clear that the judgment of

the Marine Court was a conclusive adjudication of the question of the payment of the mortgage indebtedness as alleged by Litch, and that he is now estopped to relitigate the same question in this suit.

Having reached this conclusion, it will be unnecessary for us to consider the point upon which the Appellate Court based its judgment, viz, that the evidence adduced by Litch in support of his cross-bill in this case fails to establish payment.

Is the mortgage in favor of the Platt estate barred by the Statute of Limitations? The conveyance by which the mortgage lien was created bears date September 23, 1873. The indebtedness thereby secured was subsequently put into new notes which matured July 15, 1876, except one note for $30 which matured August 23, 1875. The suit upon said notes in the Marine Court of the city of New York was commenced by the service of summons December 9, 1881, and judgment therein for the amount of said notes was rendered February 17, 1882. The original bill for partition in this case was filed April 17, 1879, and Litch's cross-bill, which, so far as the mortgage lien is concerned, may perhaps be treated as a bill to redeem, was filed January 1, 1883.

Section 11 of the Statute of Limitations is as follows: "No person shall commence an action or make a sale to foreclose any mortgage or deed of trust in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrues." If we should hold that the statute commenced to run from the maturity of said notes, and that its running was not arrested by the judgment of the Marine Court, a little less than six years and a half had elapsed, reckoning from the maturity of the two principal notes, at the date of the filing of said cross-bill, and less than seven years and six months, reckoning from the maturity of the small note for $30. Clearly then the mortgage was not barred at the time the cross-bill was filed, and for all the purposes of this suit, the filing of the original bill, or at least of the cross-bill,

must be held to have arrested the running of the statute. But we are also of the opinion that the commencement of the suit in the Marine Court arrested the running of the statute, and that it thereafter commenced to run from the date of the judgment in that suit, and upon that theory the statutory period of ten years had not elapsed at the time the decree in this case was rendered.

As to the remaining point, viz, that Litch should have been allowed to apply in satisfaction of said mortgage lien his claim for compensation for the use of the papers in his Boston suit, we are inclined to concur in the view expressed by the chancellor in his decree, that said claim is unliquidated, and is not germane to the present litigation, and that there are no equitable circumstances shown which should entitle Litch to have said claim applied as an equitable set-off. But apart from that, there does not seem to be any evidence, except that of Litch himself, by which the existence of any such claim is proved. Litch clearly is an incompetent witness. The opposite parties, and the only opposite parties having any interest in the litigation, are defending as the executors of a deceased person. R. S. 1874, chap. 51, sec. 2.

The point is made that the court gave the appellees affirmative relief, there being no pleading on their part upon which such relief could properly be based. We find no ground for such contention. The court found it is true, that the conveyance of the appellees' testator was by way of mortgage to secure certain indebtedness and ascertained and fixed the amount of said indebtedness remaining due and unpaid. But the appellant had alleged in his cross-bill that the conveyance was by way of mortgage and that the mortgage debt had been paid in full and extinguished, and prayed for a cancellation of the mortgage of record and also that his rights in said land be ascertained and declared. These allegations were traversed by the appellees, and under the issues thus formed the court was authorized to find, not only that the transaction was a

mortgage, but to find what the fact was in relation to the payment and extinguishment of the mortgage lien, and if it was ascertained not to have been paid as alleged by the appellees, to ascertain the amount remaining due. Besides, the cross-bill was filed in a proceeding for partition, and in such proceeding both complainants and defendants are actors, and it may become the duty of the court, in order to give the relief prayed for in the original bill, to examine and determine the rights of all parties interested in the premises sought to be partitioned. We are of the opinion that in this case the court was warranted by the state of the pleadings in making the findings above mentioned.

The decree is warranted by the evidence, and the judgment of the Appellate Court affirming said decree will be affirmed.

*Judgment affirmed.*