Boddie v. Brewer & Hofmann Brewing Co.

107    357
a204s 352

## John T. Boddie v. Brewer & Hofmann Brewing Company et al.

1. CHANCERY PRACTICE—*A Strong Presumption in Favor of the Chancellor's Decree.*—A strong presumption exists in favor of the findings of the chancellor's decree, so far as they relate to questions upon which the evidence is conflicting, and that presumption must prevail, unless the court is able to see that the chancellor was clearly and manifestly in error.

2. RES ADJUDICATA—*Statement of the Doctrine.*—Where a given matter becomes the subject-matter in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, per-

mit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence, or even accident, omitted a part of their defense. The plea of *res adjudicata* applies not only to the point upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising a reasonable diligence might have brought forward in time.

3. CRIMINAL LAW—*Section 135 of the Criminal Code Construed.*— In enacting section 135 of the Criminal Code entitled " Proceedings to Vacate Gambling Contracts," and providing that all judgments contrary to the provisions of this act may be set aside and vacated, the legislature intended to make all judgments, like the contracts upon which they were founded, absolutely void and of no vitality, and they can not be vitalized by the action of any court.

4. SAME—*Defense of Illegality of Contract Need Not Be Set Up at Law Under Section 137 of the Criminal Code.*—The defense of illegality of the contract need not be set up or adjudicated in an action at law in order to entitle a party to bring a bill in equity to declare null and void judgments obtained on contracts prohibited by section 131 of the criminal code.

5. EQUITY—*Will Not Aid a Guilty Party to Recover Rents Paid Under a Lease Made in Violation of Law.*—A party having knowingly embarked in an enterprise prohibited alike by the statute, by good conscience, and by public policy, places himself outside the pale of the law. The courts will enforce the statute but will not lend their assistance to a guilty party for the recovery of moneys voluntarily paid out under a lease prohibited by law.

**Bill for an Injunction.**—Error to the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Affirmed. Opinion filed March 31, 1903.

**Statement.**—February 3, 1893, a lease was executed by John T. Boddie, plaintiff in error, as lessor, and by William Wolf, Ambrose Andree, and defendant in error, Brewer & Hofmann Brewing Company, as lessees, of premises known as "The Store," No. 130 South Clark street, Chicago, also a portion of the rear part of the basement of the same, "to be occupied as a saloon and for no other purpose whatever," until April 30, 1897, at rental of $500 per month.

June 13, 1893, Boddie caused to be entered up judgment of $1,420 against all lessees for rent accruing under said

lease, which was duly paid.   February 17, 1894, suit was brought for an unpaid balance of rent for December, 1893, and January and February, 1894, and defendant in error, Brewer & Hofmann Brewing Company, filed its several pleas, of the general issue, *non est factum*, denying joint liability with Wolf and Andree, *ultra vires*, and a further plea that it was surety for Wolf and Andree and had no authority in law to execute said lease as such surety; at the trial a verdict of the jury in the sum of $1,305 was obtained. Appeal from said judgment was taken to the Appellate Court and from thence to the Supreme Court and judgment affirmed.   (See 162 Ill. 346; 59 Ill. App. 45.)   Said judgment was paid in full.   · April 6, 1894, lessor brought another action upon said lease for the months of March and April, 1894, and the defendant in error filed pleas as in the former action, and the case was tried, resulting in a verdict by a jury and judgment, which was paid.   June 29, 1894, judgment for rent for May and June, 1894, was obtained and paid.   By stipulation executions were not issued on the three last mentioned judgments, until the opinion heretofore mentioned had been handed down.   In the latter part of June, 1894, said brewing company abandoned said premises and paid no rent thereafter.   December 17, 1894, lessor began another suit against lessees, claiming rent for months of July to December, both inclusive, 1894.   The brewing company appeared and filed pleas substantially as filed in the other suits and setting up further that having abandoned the premises on or prior to July 1, 1894, said lease was executory and *ultra vires;* after trial and defense upon these issues a verdict for $1,750 was returned and judgment thereon rendered March 13, 1897, and thereafter writ of error was sued out and said judgment was affirmed by the Appellate Court (80 Ill. App. 353), and later affirmed, as appears in 181 Ill. 622.   Said judgment remains unpaid.

March 16, 1899, Boddie caused judgment to be entered against said lessees in the sum of $5,794.42 for the balance of unpaid rent from January 1, 1895, to and including the month of April, 1897, being the expiration of the lease.

The brewing company contested the claim under pleas similar to those filed in the other suits. Under a clause in the lease permitting the same, the lessor rented said premises and applied the rentals toward payment of the rent stipulated for in the lease. November 28, 1899, a bill was filed by the brewing company against Boddie to restrain the collection of the said two last mentioned judgments and for other relief. In said bill were alleged the making of said lease and the various judgments as above stated. It was further alleged that the said Brewer & Hofmann Brewing Company was a corporation organized to engage in brewing beer and selling the same at wholesale, and that it has never had any other business, and that it had no power under its charter to carry on the saloon business, but that Wolf and Andree were the real tenants and that it was in law a surety on said lease, and that since the fifteenth day of June, 1894, it had nothing to do with the premises except "to pay judgments and to endure litigation;" that the premises 130 South Clark street are not desirable renting property because it has been devoted for years to an inferior grade of beer saloons, gambling houses and other resorts. It is further alleged that at the time of the execution of the said lease, upon the officers of the company calling his attention to the fact that the place would probably be unprofitable as an ordinary saloon unless the place should be carried on as a gambling house, said Boddie stated that he did not care to what purpose the premises were put so long as he received his rent, and that he would not express the purpose of gambling in the lease, but would only express that the premises should be used for a saloon; but it was distinctly understood and agreed by and between the company and the said Boddie that whenever the company saw fit it could carry on gambling on said premises openly and publicly, for the purpose of making enough money to pay the exorbitant rent. It is further alleged that the word saloon in said lease is a device to cover up the agreement between the brewing company and the said Boddie and was used to designate a place for the retail sale

Boddie v. Brewer & Hofmann Brewing Co.

of liquor and the carrying on of a gambling-house; that pursuant to said agreement with said Boddie the company caused to be installed in said premises a gambling outfit consisting of tables, cards, dice and a roulette wheel, with all the paraphernalia and accessories thereunto belonging, and that the games were patronized daily and nightly by a large number of people; that said Boddie frequently saw said games and expressed his gratification at the prosperity of the house; that said gambling was carried on practically all of the time until it abandoned said premises, being forced thereto by the police department. It is prayed that all moneys paid under said lease may be refunded. Answer of John T. Boddie was filed denying the alleged renting of the premises for gambling purposes. Replication was filed and oral testimony heard in open court and decree restraining the collection of the two last above mentioned judgments was entered and the remainder of the prayer denied.

LOESCH BROS. & HOWELL, attorneys for plaintiff in error.

EDWARD MAHER, attorney for defendant in error.

MR. JUSTICE BURKE delivered the opinion of the court.

The bill in this case was filed to enjoin the collection of two judgments at law obtained for rent of premises known as "The Store," number 130 Clark street, Chicago. The main contention on the part of the plaintiff in error is twofold : First, that the premises in question were not leased by him for gambling purposes; and second, that it is too late now, after trials in a court of law, to raise such objection to the judgments.

First. Witnesses were produced by both parties and their testimony taken in open court and heard by the chancellor. There is a sharp conflict in the evidence. The court after seeing and hearing the witnesses and considering their testimony found that the premises in question from about the first day of September, 1893, were, with the knowledge and consent of the plaintiff in error, in actual, open, public and notorious use as a gambling house, and

that while the lease between the parties provided that the premises were "to be occupied for a saloon and for no other purpose whatever," yet the actual agreement between the several parties was, that the said defendant in error might carry on the business of a gambling house within said premises, and that the words "to be occupied for a saloon and for no other purpose whatever" were a mere fraud and device to cover up the unlawful agreement between the parties. The court further found that said judgments are against public policy and are wholly null and void.

Witnesses testified that the lessor said that he would not insert the privilege of gambling in the lease, but stated, "If you want to gamble down there or if you have got a tenant that wants to gamble it is all right," and that the lessor was at the premises and saw that gambling was being carried on therein. These witnesses were contradicted by other testimony introduced in behalf of plaintiff in error. No good purpose will be served by extending this opinion to recapitulate the evidence. In looking into the record it is evident that the cause was vigorously contested in the Circuit Court. A strong presumption exists in favor of the findings of the decree, so far as they relate to questions upon which the evidence is conflicting, and that presumption must prevail, unless we are able to see that the court was clearly and manifestly in error.

"The chancellor had the same facilities for forming an opinion of the relative merit and weight of the testimony given by the several witnesses as has a jury in trials at law, and there is, therefore, the same necessity as exists on a trial by jury, that the error in finding as to facts shall be clear and palpable to authorize a reversal." Long. v. Fox, 100 Ill. 43 ; Johnson v. Johnson, 125 Ill. 514; Towle v. Wadsworth, 147 Ill. 80; Rackley v. Rackley, 151 Ill. 332.

Where the evidence is conflicting, as in the case at bar, and the chancellor, who saw the witnesses, had opportunities of determining the weight and credit to be given to their testimony which we do not possess, this court must place much reliance upon his findings and will disturb them

only in a clear case. Allen v. Hickey, 158 Ill. 362; Biggerstaff v. Biggerstaff, 180 Ill. 411.

After an examination of the evidence we shall refrain, under the well established rule, from disturbing the findings of the chancellor as to the character and purpose of the lease in question.

Second. Plaintiff in error insists that the liability of defendant in error to pay the two judgments in question is *res adjudicata*, and equity can not grant relief therefrom. It is conceded that the entry of said judgments was resisted under several pleas filed by defendant in error. The defense that the lease was a gambling contract, however, was never interposed in the said actions at law and never set up until the bill of complaint was filed.

The Supreme Courts of the United States and of the State of Illinois have approved as a proper statement of the established doctrine of *res adjudicata* the following from Henderson v. Henderson, 3 Hare, 115:

"Where a given matter becomes the subject-matter in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence, or even accident, omitted a part of their defense. The plea of *res adjudicata* applies not only to the point upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation and which the parties exercising a reasonable diligence might have brought forward in time." Morgan v. Beloit, 7 Wall. 617; Litch v. Clinch, 136 Ill. 410.

In the trials where the judgments in question were obtained, the plea of illegality of the lease was not interposed. Does the doctrine of *res adjudicata*, as above stated, estop the defendant in error in this case from setting up the subject-matter of such plea in a bill in chancery? Clearly this question must be answered in the

affirmative, unless the statute makes the plea of illegality under the statute an exception. The 131st section of the criminal code of this state, in violation of which the court found the lease in question had been made, provides that all promises, covenants, contracts, agreements and judgments where the whole, or any part of the consideration thereof, shall be for money or property won by gaming or betting, or for paying any money knowingly lent to any person or persons so gaming or betting, shall be void and of no effect. Also the 235th section of the criminal code, entitled, "Proceedings to Vacate Gaming Contracts," provides that all judgments contrary to the provisions of this act may be set aside and vacated by any court of equity upon bill filed for that purpose. In the gaming case of Abrams v. Camp, 3 Scam. 290, the general rule in equity is announced that if a defendant permits judgment to pass against him by neglect he can not afterward seek relief in equity in a matter which he could have availed himself of at law, even if a court of equity has concurrent jurisdiction with a court of law of the subject-matter of the defense. In that case the defendant set up his defense, and his failure to make it successful, presumably, was owing to his own neglect. Undoubtedly, as a general rule, a party electing to make his defense at law, and failing, is precluded from going into equity to litigate anew the same matters; but in reference to this case it is said in Mallett v. Butcher, 41 Ill. 382:

"Great reliance is placed upon the case of Abrams v. Camp, *supra*, where, under this same law, this court held that relief in such case would not be granted against a judgment at law, when a party permitted a judgment to pass against him without setting up his defense. We can not receive this as the rule in cases arising under this statute. That is *sui generis*, and provides for special cases, and must be executed alone with reference to itself; and under it we are free to say, that, neglecting to set up the statute at law, does not preclude a party claiming the benefit from a resort to chancery for relief. It was the intention of the legislature to make all judgments, like the contracts on which they were founded, absolutely void, of no

vitality, and they can not be vitalized by the action of any court."

Counsel for plaintiff in error attempts to find the point of this decision to be that where a default at law has been made, then without prejudice the defendant may go into a court of equity for necessary relief. However, in the case of Mallett v. Butcher, *supra*, it is simply stated that the defense of illegality was not made. It is not stated that no other defense was made in the suit at law and the court there say :

"It is contended here that the defense would have availed if it had been set up in an action at law. We concur in the general doctrine always enforced in this court, that when a party has a defense to an action at law known to him, and he fails to make it, no court can relieve him. But this case is peculiar. The statute declares all judgments obtained on a gambling contract may be set aside and vacated by any court of equity, upon bill filed for that purpose."

In Abrams v. Camp, an unsuccessful defense upon issue joined was made, and afterward a bill was filed for relief under the statute, and to make entirely certain that no party may derive any benefit from gambling contracts or judgments at law founded thereon, the court feels compelled to use the following language :

"We can not subscribe to the doctrine of Abrams v. Camp, though the maxim, *stare decisis*, is most valuable in the law, and in judicial proceedings the higher behests of the legislature must have precedence and controlling power."

From that opinion it is clear that the court considered the statute very broad, and that it made void, not voidable only, all contracts having their origin in gaming, and "in the proper interpretation and understanding of the law it was there held to be entirely immaterial when or how the statute is made patent to the court." In West v. Carter, 129 Ill. 249, it was said :

"It can make no difference that a defense was or might have been made in a suit at law to recover judgment on an illegal contract. The rule in equity that courts will not take jurisdiction where there is an adequate defense or

remedy at law must yield to the requirements of the statute, that relief may be granted in a court of equity, to vacate and set aside judgments and contracts obtained in violation of the statute, and it was so held in Mallett v. Butcher, *supra*, overruling Abrams v. Camp, 3 Scam. 290."

The court, having determined that it can make no difference whether a defense was or might have been made in the suit at law, proceeds to consider whether the complainant was one of the parties authorized by the statute to file a bill, and decides that he was not such a party, and holds, therefore, that the bill will not lie. The court in West v. Carter very clearly recognizes that the statute makes a case, *sui generis*, and that any judgment founded upon an illegal contract, though contested in the suit at law on grounds other than its illegality, has no vitality in it and that a court of chancery under section 135, aforesaid, is given the power to pronounce it, as it is in fact, utterly null and void.

If it be urged that the court in the cases above mentioned unequivocally expressed an opinion as to the absolute nullity of a judgment founded upon a contract made illegal under section 135, aforesaid, and thus in a sense went further than was necessary, still it is to be replied that if the court held that such a contract was void and could not be vitalized by any court, it was not necessary for the court to say that such judgment, obtained where no defense was made at law, could be vacated by a court of chancery. The utterances of the Supreme Court with respect to judgments founded on contracts in contravention of the statute are not only deliberate but pronounced with no uncertainty and with reference to the consequences of gambling sought to be prevented by the legislature.

There is much conflict of opinion in the final courts of the various states on the question as to whether a failure to defend at law need be excused in a bill filed to enjoin a judgment founded upon a contract of the nature involved in this case. In Skipwith v. Strother, 3 Rand. (Va.) 214, it is said:

"The complainant in equity produced abundant evidence

of the gaming and no doubt might have produced it at law. Equity will enjoin a gaming judgment though the party has failed to defend himself at law and gives no good reason for such failure." The decision is placed on the ground of the original vice of the transaction.

In White v. Washington, 5 Grattan, 645, the following significant language is used:

"When a verdict and judgment have been rendered against the party aggrieved upon the full and fair trial at law, he is thereby concluded as to adverse evidence; yet he is not thereby precluded from a discovery in equity, and relief there, upon such discovery, if obtained. And there is no good reason to the contrary; for the admission of such gaming consideration in an answer to such bill shows that the defense at law failed from a want of evidence to establish the truth, and the policy of preventing protracted litigation must yield in such cases to the higher policy of ferreting out and suppressing violations of the statute against unlawful gaming, which latter policy the legislature has anxiously pursued by numerous stringent enactments, and by a sweeping provision that all acts against gaming shall be construed as remedial statutes."

In Harris v. McDonald, 194 Ill. 75, the Supreme Court summarized the holdings of the cases of Mallett v. Butcher and of West v. Carter as follows :

" It is not a sufficient defense to the bill to prove that the complainant appeared and defended in the suit at law in which the judgment was rendered, it appearing that the illegality of the contract under the statute alleged in the bill as the ground for relief was not set up or adjudicated in the action at law. In these cases it was held that this statute takes cases of this character out of the general rule that a defense must be made at law if action is brought on the gaming contract."

In the Harris v. McDonald case, it was found that appellee was not aware before judgment was rendered that appellant had knowingly leased the premises for gambling purposes, and of course that defense was not made in the suit at law. The want of knowledge of the illegality of the lease is only assigned as a reason why probably the defense of illegality was not made at law, but contains no intimation on the part of the Supreme Court of a desire to

reverse its former decisions on that subject, and affirms the case reported in 79 Ill. App. 638.

· We are therefore of the opinion that the doctrine of *res adjudicata* does not operate to prevent relief under the facts as found by the chancellor in this case. Defendant in error insists that the court erred in not decreeing a repayment of the rentals paid under the illegal contract of leasing. We have examined the record and the authorities cited by counsel in support of this contention and are of the opinion that there is not the slightest evidence tending to show that the defendant in error did not have every opportunity possible to urge the defense of illegality before being required to pay. The defendant in error did not voluntarily pay the judgments so far as they could be resisted through the defenses pleaded; the defense of illegality, though known, was not put forward, but it must be therefore presumed that for some reason potent with the defendant in error the money was voluntarily paid, without urging the defense of illegality, and under the facts of this case the language of Shaffner v. Pinchback, 133 Ill. 410, is apt and controlling :

" The defendant in error, having knowingly embarked in an enterprise prohibited alike by the statute, by good conscience, and by public policy, placed itself outside of the pale of law, and it follows that both good morals and public policy require that the law should not aid it."

The courts will enforce the statute, but will not lend their assistance to a guilty party for the recovery of moneys voluntarily paid out under the circumstances of the case at bar.

Under the evidence and the law applicable to the class of cases to which this belongs the decree of the Circuit Court must be affirmed.