JOHANNA GODSCHALCK, Plaintiff in Error, *vs.* HENRY
WEBER, Defendant in Error.

*Opinion filed October 28, 1910—Rehearing denied Dec. 14, 1910.*

1. RES JUDICATA—*doctrine is not limited to questions actually
decided.* The doctrine of *res judicata* extends not only to the ques-
tions which were actually decided in the former case, but to all
matters properly involved which might have been raised and de-
termined and to all grounds of recovery or defense which the par-
ties might then have presented, whether they did so or not.

2. SAME—*when dismissal of bill is res judicata.* A decree dis-
missing, after a hearing on the merits, a bill to establish title in
complainant to land held by her brother in his name is *res judicata*
of a subsequent bill for substantially the same relief, where com-
plainant bases her claim in each case upon the same contract al-
though the second bill alleges a different reason from the first bill
for the taking of the title in the brother's name, and where no
ground for relief is urged in the second bill that did not exist at
the time of the first adjudication.

3. SAME—*what does not destroy force of decree as res judicata.*
The fact that a bill which was dismissed after a hearing upon the
merits would have been insufficient, had the defense of the Statute
of Frauds been raised by demurrer or plea, to warrant a decree for
any relief does not destroy the force of the decree as *res judicata.*

WRIT OF ERROR to the Circuit Court of Douglas county;
the Hon. WILLIAM C. JOHNS, Judge, presiding.

E. J. MILLER, for plaintiff in error.

HUGH CREA, CHARLES G. ECKHART, and HUGH W.
HOUSUM, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error brings up for review a decree of the
circuit court of Douglas county dismissing upon demurrer
a bill whereby the plaintiff in error sought to redeem cer-
tain real estate from a lien thereon, to have an accounting
of the rents and profits thereof and to have a conveyance
of the title made to her. It appears from the allegations

of the bill in its final form, that Joseph Fulmer, the father of the plaintiff in error, died about 1863 in Vigo county, Indiana, owning one hundred and forty-five acres of land there and certain personal property, and leaving a widow and eight children, the plaintiff in error being then about twelve years old. The personal estate was never sold and the widow and children continued to reside on the land without partition. Ruben H. Fulmer, a brother of plaintiff in error, by reason of his age became the manager of the land, controlled the estate, used the personal property and the proceeds as his own, and made large profits. Plaintiff in error remained at home and assisted in doing the work until she was thirty-one years old, when she married and removed to Douglas county, Illinois. Prior to March 10, 1887, Ruben informed the plaintiff in error that if she would select a farm he would buy the place for her and pay for it for her share in her father's estate. Thereupon she contracted for the eighty acres of land in question in this case for $3080, and on March 10, 1887, the contract was consummated, and by virtue of the agreement between the plaintiff in error and her brother the deed to the land was taken in his name, with the agreement that he should hold the paper title until the plaintiff in error and her husband should pay off the mortgage which was on the land at the time of the purchase thereof, to the amount of $1500, which mortgage was given by the said Ruben H. Fulmer, with the consent and at the instance of the plaintiff in error, as a part of the purchase price of said land. The said Fulmer agreed to convey the said land to the plaintiff in error as soon as she would pay off said $1500 mortgage. The greater part of the purchase money except the $1500 mortgage was advanced by the brother, but the money so advanced was due the plaintiff in error from her father's estate, from the rents and profits of the home farm and for her interest in the farm. Of the purchase money $155 was paid by the husband of the plaintiff in error. Her

brother directed the plaintiff in error to take possession of said land, move on it with her family, live in the residence and occupy it as her own, and make such improvements as she was able, because, he stated to her, it was her land, and he was simply holding the paper title thereto and was ready to convey it to her when she should pay off the encumbrance. It was further agreed that she should pay the taxes on the land. The plaintiff in error thereupon took possession of the land and occupied and resided upon it with her husband and family for many years, paying all taxes as well as the interest on the mortgage, and making permanent improvements to the amount of $1700 with her own money and with the consent of her brother. The plaintiff in error subsequently borrowed $2200, with which she paid off the $1500 mortgage and an indebtedness to her brother for money borrowed of him, and, the title still remaining in him, he executed the mortgage securing the $2200 loan on the land. She paid the interest on the new loan and her brother did not deny her right to a deed, but in August, 1893, he made an assignment for the benefit of creditors, including therein this land. The plaintiff in error then filed a bill in the circuit court of Douglas county, to the October term, 1893, setting up the facts which have been narrated, offering to convey her interest in her father's farm and to release all claim for the rents and profits thereof, and praying for a conveyance of the Douglas county land to her and the removal of the cloud upon her title, caused by the deed of assignment.

This bill is set out *in hæc verba* in the bill in the present case and is followed by a statement of the proceedings under it, resulting in a decree at the April term, 1895, of the Douglas county circuit court dismissing the bill, after a hearing upon the pleadings and evidence, and an affirmance of that decree by this court at the October term, 1898. (*Godschalk* v. *Fulmer*, 176 Ill. 64.) The plaintiff in error had remained in possession during the pendency of these

proceedings, but in the meantime default was made in the payment of interest on the $2200 mortgage and a bill was filed to foreclose it. The name of the plaintiff in error not appearing of record in connection with the title, though she and her husband were in possession of the land, they were not made parties to the foreclosure suit when the bill was filed. A decree was rendered foreclosing the mortgage, the premises were sold by the master and a deed was made to the assignee of the purchaser, who procured a writ of assistance for the possession of the land. Before the execution of the writ the original bill in the present case was filed on January 14, 1898, and a preliminary injunction was obtained restraining the sheriff from dispossessing the plaintiff in error. This preliminary injunction was afterwards dissolved, and in December, 1898, the writ of assistance was executed by ejecting the plaintiff in error from the land.

The amended bill, to which the demurrer was sustained, was filed February 3, 1910. Besides the facts which have been already stated, it set out the proceedings in the foreclosure suit, showing, as is insisted by plaintiff in error, that the court had no jurisdiction of her person and the decree was therefore of no force against her. It also set out the conveyances whereby defendant in error acquired the title under the foreclosure decree, and various proceedings in the present case from the filing of the bill on January 14, 1898, to the filing of the amended bill on February 3, 1910. It will not be necessary to make any further reference to these statements, because we hold that the decree dismissing the former bill filed by the plaintiff in error was an adjudication that she had no interest in the land and is a bar to her maintenance of this suit.

The only substantial difference, if it may be called substantial, between the averments of the present bill and those of the former bill in respect to the equities of the plaintiff in the land as against her brother, is in the state-

ment of the agreement or understanding under which the deed was made to the brother, in 1887. The statement of the present bill in that regard has been given. The statement of the former bill was that the contract for the purchase of the land was consummated, and in consideration of an agreement between the plaintiff in error and the said Ruben H. Fulmer the deed was taken to and in the name of said Fulmer, to be by him held in trust for the plaintiff in error, for the reason that there were fears that if the deed were taken in the name of the plaintiff in error, she might, through the influence of her husband, squander and lose the farm for debts made by her husband, and so it was agreed that the deed might be, and it was, taken in the name of Ruben H. Fulmer, to be by him held in trust for the plaintiff in error until she and her husband should pay off the trust deed lien against the lands to the amount of $1500, and interest.

The present bill states in regard to the former bill that it is doubtless true that had a demurrer been interposed to the bill of complaint it would have been dismissed upon demurrer, as being insufficient upon which to base a decree for any kind of relief; that the bill of complaint was not, and could not properly be, construed as a bill to enforce the specific performance of a verbal contract for the conveyance of land, for the reason, among others, that there was no claim made in the bill of complaint that the plaintiff in error had complied with the contract made with her brother in reference to paying off the indebtedness against the land, and that there was no averment in the bill of complaint that the plaintiff in error was ready to do so; and if viewed as a bill for the specific performance of a verbal contract for the conveyance of land,· the bill was not sufficient, on its face, to sustain any decree for any kind of relief in favor of the plaintiff in error, and that the decree rendered in said cause was necessary because of defective pleadings.

247—18

The doctrine of *res judicata* extends not only to the questions which were actually decided in the former case, but to the whole controversy,—to all matters properly involved which might have been raised and determined, and to all grounds of recovery or defense which the parties might have presented, whether they did so or not. The rule is so stated in numerous decisions, and the doctrine applicable to this case is thus stated in *Henderson* v. *Henderson,* 3 Hare, 115: "In trying this question I believe I state the rule of the court correctly, that where a given matter becomes the subject matter of litigation in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect to a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have, from negligence, inadvertence or even accident, omitted a part of their cause. The plea of *res judicata* applies not only to the point upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising a reasonable diligence, might have brought forward in time." The principle "extends not only to questions of fact and law which were decided in the former suit, but also to the grounds of recovery or defense which might have been but were not presented." (*Town of Beloit* v. *Morgan,* 7 Wall. 619.) The language of these decisions has been quoted as announcing the true doctrine in *Litch* v. *Clinch,* 136 Ill. 410, and *Harmon* v. *Auditor of Public Accounts,* 123 id. 122. In the latter case it is said, on page 133: "Nor is such former judgment or decree conclusive only as to questions actually and formally litigated. It is conclusive as to all questions within the issue, whether formally litigated or not." In *Rogers*

v. *Higgins,* 57 Ill. 244, it is said: "When the complainant before presented his cause of action before the court he should have brought forward and urged all the reasons which then existed for the support of it. The controversy cannot be re-opened to hear an additional reason which before existed and was within the knowledge of 'the party, in support of the same cause of action." So it was held in *Bailey* v. *Bailey,* 115 Ill. 551; and among numerous other cases to the same effect may be cited *Hamilton* v. *Quimby,* 46 Ill. 90; *Kelly* v. *Donlin,* 70 id. 378; *Allen* v. *Haley,* 169 id. 532; *Terre Haute and Indianapolis Railroad Co.* v. *Peoria and Pekin Union Railway Co.* 182 id. 561; *Harvey* v. *Aurora and Geneva Railway Co.* 186 id. 283; *In re Northwestern University,* 206 id. 64.

The issue in the former case was, as in this, the equity of the plaintiff in error in the Douglas county land arising out of her agreement with Ruben H. Fulmer. She knew what that contract was as well in 1893 as in 1898. Nothing affecting her rights had occurred except the subsequent litigation. It was her duty to have presented to the court all the right and title she had to the property when she filed the first bill. Whether the present bill be regarded as presenting any better case than the first or not, the plaintiff in error cannot now have any advantage in a second suit of what was negligently omitted from the first, or of any claim for relief in respect to her equitable rights which then existed but was not presented.

The objection that the first bill was insufficient on demurrer and would not have sustained a decree, and for that reason is not a bar, is not tenable. It is true that, regarded as a bill to enforce an express trust, the suit was subject to the defense of the Statute of Frauds. It is also true that that defense may be taken by demurrer when it appears from the face of the bill that the case stated is within the statute. (*Cloud* v. *Greasley,* 125 Ill. 313; *Dicken* v. *McKinley,* 163 id. 318; *Gary* v. *Newton,* 201 id. 170.)

But the defense that a contract is not in writing must be urged in the trial court. If not insisted upon by demurrer it must be set up by way of plea or answer. It cannot be raised for the first time on appeal. (*Lear* v. *Chouteau,* 23 Ill. 39; *McClure* v. *Otrich,* 118 id. 320; *Finucan* v. *Kendig,* 109 id. 198.) If a default be suffered the defense is regarded as waived and a decree may be properly rendered in accordance with the prayer of the bill. (*Boston* v. *Nichols,* 47 Ill. 353; *Clayton* v. *Lemen,* 233 id. 435.) The dismissal of a bill for a defect going to the jurisdiction of a court of equity does not constitute a bar to another bill or action at law. (*Gage* v. *Ewing,* 114 Ill. 15; *Lundy* v. *Mason,* 174 id. 505.) But this rule does not apply here, for the case presented was within the jurisdiction of equity and it was decided on its merits.

The decree is affirmed.

*Decree affirmed.*