NAOMI EMERICK

*v.*

ADE O. HILEMAN, Admr.

*Opinion filed December 21, 1898.*

1. EXECUTORS AND ADMINISTRATORS—*when administrator pro tem need not be appointed.* The county court has power to hear proofs and allow an administrator credit for an unendorsed payment upon his note to the intestate, which he has inventoried at its face value, "less all payments and endorsements," without appointing an administrator *pro tem*, as provided in section 72 of the Administration act, (Rev. Stat. 1874, p. 117,) concerning claims of administrators.

2. SAME—*right of administrator to a credit is not a claim.* The right of an administrator to have the county court allow him credit for an unendorsed payment on his note to the intestate is not a "claim," within the meaning of sections 60 and 72 of the Administration act.

3. EVIDENCE—*when an administrator is competent to testify in his own behalf.* Upon the hearing of objections to an administrator's final report, which question his right to a credit for an unendorsed payment on his note to the intestate, the administrator is competent to testify as to matters occurring after the death of the intestate and as to the endorsements on the note when it was inventoried.

4. APPEALS AND ERRORS—*one cannot complain of error he has invited.* One cannot complain that evidence is incompetent which he has himself called out upon improper cross-examination.

*Emerick* v. *Hileman,* 71 Ill. App. 512, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Carroll county; the Hon. A. F. WINGERT, Judge, presiding.

On the 25th day of March, 1893, Ann B. Hileman died in Carroll county, Illinois, leaving an estate amounting to about $14,000, and also left Ade O. Hileman, Lucy Cowen and Naomi Emerick as her children and sole heirs-at-law. Ade O. Hileman was appointed administrator, and at the July term, 1893, he filed in the Carroll county court his inventory in said estate. Among the items of assets of the estate he inventoried a note due from himself, dated April 30, 1881, for the sum of $3900, interest

at six per cent, "less payments." He also inventoried a note from Namen Woodin at $700, dated October 1, 1892, at six per cent. Both these notes were reported good. The inventory was approved. At the July term, 1894, he filed his first report, in which he charged himself with having received $9075.78, among which items are: "October 31, 1893, payment on note from Namen Woodin, $300;" "January 27, 1894, balance principal and interest, Namen Woodin, $451.88;" "August 1, 1893, balance due on Ade O. Hileman note and mortgage inventoried, *less all payments and endorsements*, $1281.90." He shows in the said report amounts paid out aggregating $89.89. In the same report is the following: "I, Ade O, Hileman, hereby ask this honorable court, as administrator, to appoint some discreet person as administrator *pro tem*, for the sole and only purpose of releasing of record in the Carroll county recorder's office a certain mortgage which secured the note of said Ade O. Hileman inventoried herein, which note has been fully paid by him, and he has charged himself, as such administrator, for the balance due on said note, as appears in this report, said mortgage being recorded in said recorder's office in book 25 of mortgages, page 593."

The said report was filed July 7, 1894, and on July 10, 1894, there was a hearing as to said report and petition, and the court entered an order showing the presenting of the report for approval, and that the cause came on for hearing upon the report, the exhibits and proofs', and that the court found, from the evidence, that said report was a just and true statement of the condition of said estate, and the report was approved. The court in the order further found, from the evidence, that Ade O. Hileman was indebted to the said Ann B. Hileman in her lifetime; that said debt remained unpaid at her death; that he had executed a mortgage to secure said indebtedness; that he had paid said debt and charged himself, as administrator, therewith. The order then appointed

an administrator *pro tem* for the sole and only purpose of discharging said mortgage of record.

·At the January term, 1895, the administrator filed another report, which was also approved, and an order entered for distribution of the principal part of the estate, which distribution was made and reported to the court, and an order and decree made approving the same.

At the July term, 1895, the administrator asked to be discharged on distributing $54.06, and notice was given to the heirs. Objections were filed by Naomi Emerick to the administrator's report and discharge. After a hearing the county court overruled the objections to the final report, approved the same and discharged the administrator. An appeal was taken by Naomi Emerick to the circuit court, where the case was tried by the court without a jury and written propositions of law were submitted. The circuit court also overruled the objections and exceptions to the final report of the administrator, and objector appealed to the Appellate Court for the Second District, where the judgment was affirmed, and from that judgment the case was appealed to this court.

HENRY MACKAY, for appellant.

GEORGE L. HOFFMAN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The principal controversy in this case arises over the note inventoried at $3900, "less payments," due from the administrator to the deceased, on which certain payments had been endorsed, and also payments made to his mother in her lifetime, amounting to $972.60, which had not been endorsed, but which the administrator claims should have been endorsed thereon.

Appellant contends that as the payments, amounting to $972.60, were not endorsed upon the back of the note, the administrator should have filed his claim against the estate and had an administrator *pro tem* appointed to de-

fend, as provided in section 72 of chapter 3 of the Revised Statutes. This was not necessary. The estate owed the administrator nothing, but he owed the estate a balance of $1281.90, as found by the probate court. The demand of the administrator was not a claim, within the meaning of section 60 of chapter 3 of the Revised Statutes, but consisted of payments made to the deceased in her lifetime and not credited. As the Appellate Court very properly said: "Section 60 of the Administration act requires a claimant to swear that his claim is just and unpaid after allowing all just credits. This administrator can not so swear, if, as he claims, these payments by him were payments upon the note. The balance was against him and the estate owed him nothing. The question how much was due from him to the estate on his note could not be settled by his filing a claim against the estate for all or any part of what he had paid on the note, whether endorsed or unendorsed. Payments to the deceased on a debt could not constitute claims to be put in judgment against her estate. Payment extinguishes the obligation of the debtor, but raises no obligation on the part of the creditor to refund the money so paid. (*Litch* v. *Clinch*, 136 Ill. 410.) The amount due from the administrator could have been determined by having the court appoint a special administrator to bring suit at law against Ade O. Hileman in some court of record upon his note, or to file a bill against him to foreclose the mortgage; but this would have entailed unnecessary expense, and would have removed the question from the determination of the county court on its probate side, and, indeed, would have taken the whole matter away from the county court, as there was more than $1000 still due. The administrator was apparently ready and willing to pay all he owed. We cannot hold the county court had no power to determine the amount due from its administrator. It had jurisdiction of this administrator and of his inventories and reports, and power to require him to charge himself

with whatever sums were legally chargeable against him. If any heir or interested creditor had shown to the county court, by petition or other proper mode, that the note against the administrator was in fact for the principal sum of $5000, we cannot doubt the jurisdiction of the county court to hear proofs and compel the administrator to amend his inventory. If the administrator, by petition or otherwise, had shown to the county court that by mistake the principal of the note stated in the inventory at $3900 was in fact only $3000, the county court would have full authority to admit an amendment of the inventory. If on July 7, 1894, the administrator had presented to the court an amendment to the inventory as to this note, stating in detail each payment he claimed he had made thereon, in our opinion the county court would have been acting within its ordinary probate jurisdiction in investigating said alleged payments, hearing the proofs, deciding the truth of the matter, and permitting a true amendment to be filed. It may be the county court could have appointed an administrator *pro tem* in such a case to protect the interests of the estate, but no statute requires it. Every time an administrator presents a report it is possible some one might advantageously resist its approval in the interests of the heirs and creditors. In every such case the administrator may have failed to charge himself with all for which he is legally liable, or may have given himself improper credits, yet the law has not provided for the appointment of an administrator *pro tem* for such purposes. The county judge is expected to scrutinize such matters, ascertain the facts and protect the interests of all. A rule which should require the appointment of an administrator *pro tem* every time the regular administrator takes a step where he could unduly charge the estate or unduly credit himself would be a great burden upon estates."

We concur in the foregoing reasons and the conclusion reached by the Appellate Court, that the county court

had jurisdiction to hear and determine the matters presented by the administrator's first report without the appointment of an administrator to contest the account.

Appellant also contends there was no competent evidence offered on the trial in the county court from which the court could find that Ade O. Hileman could legally deduct the sum of $972.60 from the note due the estate. It appears from the evidence that on the day after the funeral of their mother, Ann B. Hileman, the objector, Mrs. Emerick, and her husband, together with W. Scott Cowen, the husband of Lucy Cowen, and Ade O. Hileman, looked over the papers and effects of deceased. Among the papers were the $3900 note and mortgage given by Ade O. Hileman to his mother April 30, 1881. On the trial in the circuit court a dispute arose as to the amount and number of the endorsements on the note at the date of the mother's death, in March, 1893. Mrs. Emerick and her husband both testified there were only three endorsements on the note when they saw it after her death. The note, it appears, was inventoried and was taken to the office of the attorney of the administrator, and was there when the first report to the county court was prepared, and was seen by three different persons, who made computations of the amount due thereon, with the endorsements, and the $972.60 of unendorsed payments claimed by the administrator, and the amount so found due was put in the report to the county court. The note was taken to the county judge and was used on the hearing of the report. At the trial in the circuit court the note could not be found. The administrator testified that he had never seen the note since it was used in the county court; that he did not know where it was then, and that he had never seen it since that time. The note being in the custody of the county court when last seen, and there being nothing to show that the administrator was responsible for its loss, the administrator should not be prejudiced by the loss. As the note was lost and could not be pro-

duced, it became material for the administrator, so far as he was able, to establish the endorsements on the note on the hearing in the circuit court.

Appellee introduced as witnesses on his part the three persons who saw the note and made the computation of the amount put in the first report. E. T. E. Becker, an attorney, one of those who made the computation, testified: "I figured the interest and endorsements and produced the amount due. * * * I think there were endorsements on the note—partial payments; couldn't remember how many there were on. * * * The computations made by all three of us substantially agreed." Miss Tomlinson testified: "Mr. Hoffman read *six endorsements from the note to me when I made the computation,* * * * and I think we virtually agreed." George L. Hoffman, the attorney for appellee, testified: "Capt. Becker, Miss Tomlinson and myself figured upon the note. * * * Becker and myself agreed substantially. Miss Tomlinson differed widely from our figures, and I re-stated the data on the note and she figured it again, then we all agreed. * * * The back of the note was—at least a large portion of it was—covered with endorsements. I further state that the amount put in the report, $1281.90, was written there by myself, and that was the amount we all agreed upon in this computation." Scott Cowan, who saw the note when the appellant, Mrs. Emerick, saw it, testified there were *more than three endorsements;* that there were endorsements of "interest paid to date," and several endorsements of interest were written "between the money endorsements." Hileman, the administrator, also testified that the back of the note "was practically covered with endorsements." This evidence clearly preponderates in favor of appellee that there were more than three endorsements on the back of the note, and leads to the conclusion that appellant only noticed the payments of principal and did not note the endorsements of interest.

Under the evidence we think the amount, $1281.90, incorporated in the report of 1894 was correct. Allowing the endorsements on the back of the note, and the $972.60 which was not endorsed but which the administrator claimed he had paid his mother in her lifetime, it seems plain that the amount incorporated in the administrator's report was the true amount due on the note and mortgage. As to the sufficiency of the proof of the $972.60, Namin Woodin, who owed the estate a note for $700, accounted for $200 paid by Ade O. Hileman to his mother during her lifetime, and the administrator, on his cross-examination, established the payment of the balance, making the $972.60.

The objection made by appellant that Ade O. Hileman was permitted by the circuit court to testify to payments made to his mother is not tenable, under the circumstances shown by the record. Hileman was a witness in his own behalf as to matters occurring after the death of his mother, Ann B. Hileman, and as to the endorsements on the note when the first report was prepared to the county court. This was competent evidence. Appellant's attorney did not, however, confine himself to cross-examining appellee upon the facts to which he testified in chief, but went further, and proved by the administrator the making of the payments which were unendorsed on the note, to his mother in her lifetime, and the several amounts which went to make the $972.60. Appellant violated the well recognized rule that "when a witness is called by one party, the other has only the right to cross-examine upon the facts to which he testified in chief." Appellant having called out this evidence himself, cannot complain that it was incompetent. *Stafford* v. *Fargo*, 35 Ill. 481.

After a careful examination of the evidence we are satisfied appellant failed to sustain her objections, and that the evidence preponderates in favor of appellee.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*