(No. 12104.—Reversed in part and remanded.)

OSCAR HEINRICH, County Clerk, vs. CHRISTOPHER HAR-
RIGAN et al. Appellees.—(THE PEOPLE ex rel. County
of Peoria et al. Appellants.)

Opinion filed April 15, 1919—Rehearing denied June 4, 1919.

1. APPEALS AND ERRORS—when question of revenue is involved.
The question of revenue is involved when some recognized au-
thority of the State or some of the municipalities authorized by
law to assess and collect taxes are attempting to proceed under the
law to collect the same and when the controversy is whether the
funds in dispute belong to the revenue of the county or State or
some division thereof.

2. SAME—executors cannot appeal, as executors, from order of
the probate court in favor of estate. Executors cannot appeal, as
executors, from an order and judgment of the probate court in
favor of the estate on a citation against them to inventory prop-
erty claimed as their own, and where they have appealed as ex-
ecutors they cannot, by stipulation in the circuit court, change the
proceeding to one under sections 81 and 82 of the Administration
act and thus escape the binding force of the probate order and
judgment, from which they have not appealed as individuals.

3. TAXES—no lien attaches to tax certificates for unpaid taxes.
The words "personal property" in section 254 of the Revenue act,
and the words "goods and chattels" in section 137, are to be con-
strued as having the same meaning and as comprehending only
such personalty as may be made subject to levy and sale under an
execution on a judgment at-law, and where tax redemption money
is paid in to the county clerk no lien attaches thereto for unpaid
taxes due from the holder of the tax certificates, which are mere
choses in action.

4. SAME—tax collector can enforce collection of taxes only by
lien of his warrant. The tax collector is authorized to demand and
receive pay for taxes or enforce a lien on his warrant, and if pay-
ment is not voluntarily made to him and he has no lien he has no
further authority to institute an action to recover the amount of
the taxes.

5. SAME—when bill of interpleader cannot be maintained as in
nature of a creditor's bill. Where a county clerk, who is sued by
an executor to recover redemption money for tax certificates, files
a bill of interpleader, making the county a defendant because it

claims the money for unpaid taxes on the estate, the bill of inter-pleader cannot be maintained as a bill in the nature of a creditor's bill, where there is no judgment against the estate or the estate is not shown to be insolvent.

6. ADMINISTRATION—*when an administrator pro tem need not be appointed.* An administrator pro tem is not necessary in a case where there is already an executor duly appointed although the executor is claiming property as his own in opposition to the estate he represents, as the appointment of such an administrator is authorized only under section 72 of the Administration act where the executor has filed a claim against the estate.

7. SAME—*proceeding under section 81 of Administration act to compel executor to inventory property is against him individually.* A proceeding under section 81 of the Administration act to compel an executor to inventory property which he claims in opposition to the estate he is administering is a proceeding against him individually.

8. PRACTICE—*practice where necessary party files a disclaimer.* A disclaimer is a mode of defense, and if it prevails the defendant must be dismissed, as a general rule, with costs, but if a defendant attempts to disclaim in a case where his disclaimer does not entitle him to a dismissal but must, notwithstanding his disclaimer, still be retained as a party defendant in order that the subject matter of the case be finally disposed of, he should be retained in the suit and his disclaimer stricken from the files.

APPEAL from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

C. E. McNEMAR, State's Attorney, (DAN R. SHEEN, of counsel,) for appellants.

MANSFIELD & COWAN, for appellees.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Michael Harrigan died in the county of Peoria on October 8, 1911, having in his possession certain tax certificates of purchase amounting to about $5000. He left a will, by which he bequeathed and devised all his property, real, personal and mixed, equally to his brother, Christopher Harrigan, and his two sisters, Maggie and Kate Harrigan,

after the payment of his debts. The executors, Christopher and Kate Harrigan, at first refused or neglected to probate the will. An administrator was appointed by the probate court of Peoria county, and being advised that there was a large amount of notes and choses in action belonging to the estate of the testator, made strict search for the same in the home where the testator had lived and died but for some time could learn nothing about such assets from the executors or otherwise. He finally found a small safe owned by the deceased in a small room or closet adjoining the kitchen. The safe was under a stairway and was skillfully concealed by hanging clothes and other such articles on the wall over it. He finally succeeded in getting the safe open, and then for the first time the executors named disclosed that there was a will, and two of them, Christopher and Kate Harrigan, filed the will for probate and were qualified as executors, the other, Maggie Harrigan, declining to become an executrix. The testator up to his death lived with his sister Maggie, where the safe was found, and Christopher and Kate lived in Chicago. About two weeks after the testator's death Kate delivered the tax certificates to Christopher, claiming that she had been told by the deceased to deliver them to Christopher because they were his property.

At the time of his death Michael was in arrears to the county of Peoria for back taxes for ten years previous to his death, amounting to the sum of $5226.13. The county clerk of said county had in his possession $1523.46 in redemption money collected by him since the death of the testator from land owners named in some of the tax certificates. The county of Peoria served notice on the county clerk to hold said redemption moneys and to apply the same as a payment upon the indebtedness of Michael for taxes to the county. Thereafter Christopher demanded of the county clerk that he pay to him said redemption moneys in exchange for the proper tax certificates then in his possession and indorsed in blank "M. Harrigan," but the clerk

declined to do so. Christopher then brought suit in assumpsit against the clerk to recover the redemption money. The county clerk, Oscar Heinrich, then filed a bill of interpleader in the circuit court of said county, making Christopher and the county of Peoria defendants, praying that they be required to interplead and settle their right to said funds, that complainant might bring the funds into court, and that Christopher be enjoined from further prosecuting his suit against him. The court so ordered, and the complainant turned over the redemption money to the circuit clerk and the court discharged the complainant from any further liability and referred the cause to the master in chancery, with directions to take and report the evidence, together with his conclusions of law and fact.

The first inventory filed by the executors included as property of the deceased at the time of his death cash on hand, $5; tender money in the hands of the circuit clerk in an unsettled suit, $356.40. This inventory was approved in open court on June 17, 1912. Another inventory was thereafter filed in which were scheduled items of wearing apparel of the deceased of trifling value and was not approved. Another inventory was then filed on the order of the court which included, in addition to the items inventoried in the first two inventories, $750 in the hands of the county clerk and in litigation. The executors further reported in the inventory that in the safe owned by Christopher Harrigan and in the residence where Michael Harrigan died, which residence was owned by Maggie Harrigan, were certain notes and mortgages (describing them) totaling $9025, all of which were prior to the death of Michael Harrigan, and "are now, the property of Kate Harrigan;" that there was another note signed by H. R. Wolland for $3000, and also certain tax certificates amounting to about $3000, which note and certificates "were owned by Christopher Harrigan and are now the property of Christopher Harrigan;" that all the notes and mortgages

and tax certificates aforesaid were listed, not as the property of the deceased but merely for the purpose of complying with the order of the court. Objections were filed to this inventory by the county, the State of Illinois and William and Winifred Harrigan, a brother and sister of the testator not named in his will. A citation was issued by the county court commanding the executors to show cause by July 8, 1912, why all the property described in said last inventory should not be inventoried as the property of the estate. They answered the citation by claiming that said property was their individual property, as aforesaid, and was not the property of the deceased. On the hearing the court found and decreed that all of said property, including the tax certificates, was the property of Michael Harrigan at the time of his death and not the property of Christopher and Kate or either of them, and ordered a complete inventory to be filed, and that they include said property therein, by October 5, 1912. The executors in their representative capacity perfected their appeal to the circuit court but did not appeal as individuals. In the circuit court it was stipulated that the two causes should be tried and considered together and that the appeal case be treated as a petition for citation, under sections 81 and 82 of the Administration act, in proper form, and that both causes be referred to the master in chancery, and they were so referred in like manner as were the issues in the interpleader case. The master found and reported that the certificates of purchase were not the property of Christopher but were the property of the estate; that the redemption money aforesaid belonged to Michael Harrigan's estate and not to Christopher; that the county had no lien on the redemption money and was not entitled to it under the interpleader, and that the appeal of the executors, as executors, from the probate court should be dismissed, as they had no appealable interest, etc.

The county of Peoria filed objections and exceptions, and on the hearing before the court Christopher Harrigan,

as sole executor of the estate, Kate Harrigan being then dead, was made a party defendant to the bill of interpleader. He then filed a joint and separate answer, individually and as executor, in which he claimed the money and the certificates as his individual property and disclaimed having any interest therein as executor. The cause was then referred, the same evidence offered and practically the same report made by the master in chancery, and the objections and exceptions were again filed by the county of Peoria. The court sustained the master's report and his findings. He further found that it was the duty of the executor to have had appointed in the probate court, and also in the circuit court, an administrator *pro tem* to defend both of these suits, and that the estate of Michael Harrigan was the owner of the certificates of purchase and that the redemption money belonged to the estate; that no reason appeared for further action by the court, and that the interpleader case should be continued until the legal owner should appear and ask for a proper order for the money in the hands of the circuit clerk, and disallowed the claims of Christopher Harrigan and the county of Peoria to the certificates and the funds and dismissed from the suit the county of Peoria without prejudice to its rights in its claim probated in the probate court and pending on appeal in the circuit court, and gave judgment for costs against the county of Peoria and Christopher Harrigan, each to pay one-half. It further appears from the record that before final decree Louis Gauss, county treasurer and *ex-officio* collector of Peoria county, presented an intervening petition in the interpleader suit and asked to be made a party thereto, and sought thereby to claim the funds in dispute as tax collector for said back taxes. The court denied him leave to intervene, and he and the county of Peoria both perfected their appeals to this court. Christopher Harrigan individually and as sole executor has assigned cross-errors.

It is insisted on the part of the appellee assigning cross-errors that this appeal is improperly brought to this court because the revenue is not involved within the meaning of our Practice act. The question of revenue is involved when some recognized authority of the State or some of the municipalities authorized by law to assess and collect taxes are attempting to proceed under the law to collect the same and questions arise between them and those of whom taxes are demanded. (*Reed* v. *Village of Chatsworth,* 201 Ill. 480; *Wilson* v. *County of Marion,* 205 id. 580.) The revenue is also involved, within the meaning of said act, when the controversy is whether the funds in dispute belong to the revenue of the county or State or some division thereof. (*People* v. *Holten,* 259 Ill. 219; *People* v. *Hibernian Banking Ass'n,* 245 id. 522.) Some of the questions here are, has the county a lien on the fund by virtue of former proceedings to collect the taxes in question, is the county entitled to have it applied on its demand for taxes, and is it entitled to the fund as taxes; and it is a proceeding to collect or enforce its demand for such taxes. The revenue is involved.

The court properly held that Christopher and Kate Harrigan, as executors, could not appeal from the order and judgment of the probate court as that order and judgment were in favor of the estate. They did not appeal as individuals, and as such are bound by that order and judgment. The proceeding was one against them as individuals. A proceeding under sections 81 and 82 of the Administration act against an administrator is one against him individually when it is sought to have property inventoried that he claims in opposition to the estate he is administering. (*Martin* v. *Martin,* 170 Ill. 18.) The judgment in the probate court being against the executors as individuals, and not being appealed from by them as individuals, it is binding on them as *res judicata* whether this proceeding be considered as under section 81 or 82, aforesaid, or otherwise.

They could not change, by stipulation, the proceeding in the probate court to one under sections 81 and 82, and thus escape the binding force of the probate order and judgment, from which they had not appealed, as the court properly held.

The evidence in this record is overwhelmingly against the appellee assigning cross-errors even if the executors had the right to consider the probate case as appealed by them as individuals or if it be treated as a proceeding under section 81, and there is no theory upon which their claim as individuals can be sustained. The evidence clearly and conclusively shows that the property belonged to Michael Harrigan at the time he died. It appears therefrom that he had been a purchaser at tax sales over thirty years and had purchased a large amount of tax certificates every year. He loaned large sums of money, and at one time he owned over $20,000 of valuable bonds besides his notes, etc. He was a lawyer by profession, conducted his business in the name of M. Harrigan, while his sister Maggie during his lifetime did business as Maggie Harrigan and deposited the money in her bank in that name. He conducted his business with the express purpose and intent to at all times keep his property covered up to avoid taxes, and to permit him at any time, at a moment's notice, to pass it to anyone else, or to his legatees and devisees in case of death, so that they could baffle the public authorities in collecting the legal demands for taxes and other claims. He kept no bank account subject to check, yet he carried large amounts in the banks, evidenced by certificates of deposit. All certificates of deposit, notes given him for loans, and tax certificates, were immediately indorsed in blank by him as "M. Harrigan,"—a convenient name that might be treated as his own name or as that of Maggie Harrigan, as best suited his or his legatees' purpose. The property in question, the tax certificates, were indorsed in the same way and were in his own safe when he died, as were also the notes inventoried

288 — 12

by the executors along with the tax certificates. When he took mortgages to secure loans he immediately executed release deeds, apparently so they could be recorded at any time thereafter, either by himself or by his executors after his death, so that the record would leave no trace against them when they collected his notes. His will was executed after the same fashion, apparently as a further instrument to baffle the public authorities in establishing and collecting their demands against him and his estate. It described no property specifically. It covered any property wherever the same might be found or located. He made two quit-claim deeds to his sister Maggie on September 27, 1911,—one to a tract of land and to all real estate that he owned or had tax deeds for in Tazewell county, and one to a lot in Peoria and to all other real estate that he owned or had tax deeds for in Peoria county, each being for a nominal consideration of one dollar and other valuable consideration. She is shown to have received a lot of notes from the testator's safe since his death, and since his death has adopted the plan of doing her banking business in the name of "M. Harrigan." The evidence further shows, clearly and conclusively, that his legatees and devisees and executors have since his death taken advantage of the testator's method of doing business to conceal, as far as possible, all the property left by him and to put every obstacle possible in the way of the county and the State finding out the property, and the amount thereof, that was owned by him at his death. Their individual testimony to the effect that they owned it all and it was theirs before the testator died is so unsatisfactory, so contradictory and so unreasonable that it cannot be relied on at all and has little or no probative force in their favor. In our view of the matter no useful purpose can be served in referring to it in detail or further discussing it. We have considered the evidence with great care, and our conclusion is that the finding of the court on the facts is well sustained on the issues in both cases.

The court also properly held that the county of Peoria had no legal claim by which it could hold the redemption money. ˙ Its claim is based on the theory that the tax assessments and the collector's warrants became a lien on the property in question and would continuously be a˙lien thereon until the taxes are paid. No lien ever attached to the tax certificates for said taxes. They were but choses in action. The words "personal property," employed in section 254 of the Revenue act, and the words "goods and chattels," used in section 137, are to be construed as having the same meaning and as comprehending only such personalty as may be made subject to levy and sale under an execution upon a judgment at law. They do not extend to personal property of the character in question,—tax certificates,—which are mere choses in action. The money in question was collected by the clerk on such certificates and was never in the possession of the deceased so as to be impressed with a tax lien. (*Loeber* v. *Leininger,* 175 Ill. 484.) The power of the collector is to demand and receive pay or enforce a lien on his warrant. If payment is not voluntarily made to him and he has no lien he has no further authority to institute an action to recover the amount of the taxes. (*Loeber* v. *Leininger, supra.*) The court properly refused to allow the collector to intervene.

The court also properly held that the county of Peoria could not hold the fund upon the theory that the interpleader suit was, in effect, a creditor's bill to reach assets, etc. There is no judgment upon which a creditor's bill can be based. Appellants' claim that the estate˙is insolvent is not sustained by the proof.. In such a case, in a proceeding by a creditor's bill against an estate, there must be a judgment or the estate shown to be insolvent or a bill can not be maintained. *Steere* v. *Hoagland,* 39 Ill. 264; *Garvin, Bell & Co.* v. *Stewart's Heirs,* 59 id. 229.

It appeared from the evidence in the case that the county filed its claim for taxes in the probate court and that its

claim was allowed in the sum of $4801.13.and that the executor of the testator took an appeal to the circuit court. A number of questions have been raised by appellants as to the validity of the appeal bond, and by appellees on the question of the right of the county to have a claim allowed for taxes in the probate court against the estate of the deceased. None of those questions are pertinent to the issues in this case. It appears that the appeal is still pending in the circuit court, and it is even said by the county collector that the appeal case has not been docketed in the circuit court. All such questions are only proper for consideration on the hearing of that case, as their determination is not before this court as an issue in the court below. The court properly held that the appeal is still pending, regardless of any irregularities in the appeal bond.

The court erred in its conclusion that it was necessary that an administrator *pro tem* should have been appointed before final disposal of the case. Such an appointment is not authorized where the executor claims property as his own in opposition to the estate he represents. (*Day* v. *Bullen,* 226 Ill. 72.) It was not necessary to have such an administrator appointed in the probate court case. Such a case proceeds just as well without the appointment of such an administrator as with it. No administrator is necessary in any such case where there is already an administrator or executor duly appointed. (*Emerick* v. *Hileman,* 177 Ill. 368.) The statute authorizes such an appointment, under section 72 of the Administration act, only where the administrator or executor files an out-and-out claim against the estate. The sole executor in this case had entered his appearance herein, and the court found that the property in question was property belonging to the estate. The proper course, in the first place, was to strike his disclaimer from the files. A disclaimer is a mode of defense. If it prevails the defendant must be dismissed, and, as a general rule, he will have a right to be dismissed with costs. If

a defendant attempts to disclaim in a case where his disclaimer does not entitle him to a dismissal but he must, notwithstanding his disclaimer, still be retained as a party defendant in order that the subject matter of the case be finally disposed of, he should be retained in the suit and his disclaimer stricken. The disclaimer in this case simply amounts to an obstruction to the remedy of the complainant in this case to have the funds finally disposed of. He was entitled to a final decision of this case and to a final disposition of the funds in controversy, and the court erred in not so holding. (*Alley* v. *Adams County,* 76 Ill. 101.) The disclaimer being a mere obstruction to this end, the court, of its own motion, should have stricken it from the files. (*Isham* v. *Miller,* 44 N. J. Eq. 61; 6 Ency. of Pl. & Pr. 722.) We think the court should also have dismissed the appeal of the executors from the order of the probate court commanding them to inventory said property, etc.

The order of the circuit court, in so far as it held that the appellants and Christopher and Kate Harrigan had no interest in the property in question and entered a final decree against them, is affirmed without prejudice to the said county in prosecuting its claim for taxes against said estate, but the other part of the decree is reversed and the cause is remanded, with directions that it dismiss the appeal from the probate court, strike the disclaimer of the executor from the files and that it enter a decree herein holding that the property is the property of the estate of Michael Harrigan, deceased, and that the clerk of the court be directed to pay the same to Christopher Harrigan as sole executor, and that said executor hold said funds as the property of the estate of Michael Harrigan, to be paid out by him in due course of administration of the estate, and that the appellant the county of Peoria and Christopher Harrigan pay all the costs in the court below individually, one-half each.

*Reversed in part and remanded, with directions.*