*In re* ESTATE OF CLARENCE O. RAINES, Deceased.—(JULIA MAY RAINES *et al.*, Petitioners-Appellants, *v.* DAVID T. RALLO *et al.*, Objectors-Appellees.)

First District (2nd Division)    No. 79-2171

Opinion filed December 30, 1980.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellant Julia May Raines.

Meloche & Kapov, of Chicago (Alvin G. Hubbard and Rory D. Cassidy, of counsel), for appellant Maryland Casualty Company.

Scott & Fulkerson, of Chicago (Alan L. Fulkerson and Edward A. Scott, III, of counsel), for appellee David T. Rallo, Administrator *de bonis non*.

Shea & Hett, Ltd., of Berwyn (Ira A. Rogal, of counsel), for appellee Gerald W. Shea, guardian ad litem.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Julia May Raines (Raines), the removed administrator of the estate of Clarence O. Raines, her husband, who died intestate, and Maryland Casualty Company (Maryland), surety on her bond in the amount of $22,500, appeal from an order of the trial court striking Maryland's petition in lieu of final account; stating the court's own account in the amount of $19,431.27; and ordering Raines to pay over to David T. Rallo, administrator *de bonis non*, the sum of $19,431.27 within 14 days. They also appeal from a subsequent order denying Maryland's motion to vacate the June 28, 1979, order and requiring Maryland to pay Rallo $19,431.27. Raines and Maryland raise as issues whether or not the court properly relied upon the administrator's first inventory as evidence of the value of the estate, and whether the court may deny the surety an opportunity to file an account on behalf of Raines. For the reasons given below we reverse and remand for further proceedings with directions.

Decedent died March 19, 1973, and was also survived by seven minor children. His widow was appointed administrator on June 14, 1973. Decedent had been the sole proprietor of a small junkyard business. Raines presented a petition to continue decedent's business and for appointment of an appraiser on September 6, 1973, which alleged that she had taken possession of the business, currently operated it, and that it was not necessary to involve the estate beyond the assets of the business because it was self-maintaining and operated at a. profit. The probate court authorized Raines to continue the decedent's business until further order of court; prohibited involvement of the estate beyond the assets of the business; required Raines to file monthly reports with the court and appointed an appraiser of goods and chattels.

Raines filed an inventory on October 26, 1973, which showed the assets of the estate to be personalty, valued at $19,431.27. Billings Hospital filed the only claim against the estate for $2,489.25 on December 17, 1973. The claim, set for contested hearing, was withdrawn on March 6, 1974. On May 6, 1974 the court approved Raines' surviving spouse petition for $5,000; she elected to take two trucks and a crane in payment of the award. By separate orders on that same date, the court waived the appointment of a guardian ad litem to represent decedent's minor children, and granted Raines leave to sell the goods and chattels of the estate. No monthly reports were ever filed.

On April 22, 1976, the court, on its own motion and based on its findings that Raines knowingly failed to file an accounting, ordered her to show cause why she should not be held in contempt for failing to account, and further to show cause why she should not be removed as personal representative of the estate. No personal service of the order on her was

attempted; however, a copy was served on Raines by mail. The hearing on the rule to show cause was continued on a nearly monthly basis for several months, during which time Raines never appeared.

Meanwhile, on October 15, 1976, Maryland filed a petition in which it was alleged that the assets of the estate had been stolen, through no fault of the administrator and by unknown persons, and no assets were available for distribution. Maryland requested instructions as to the preparation and filing of a final account, or, in the alternative, a petition in lieu of final account. By separate order, the court ordered Raines to file a final account within 20 days and appointed Gerald W. Shea as guardian ad litem to represent the minor children at the hearing on the final account. No mention was made in this order of Maryland's petition.

By order of December 6, 1976, Raines was removed as administrator on the court's own motion; Samuel J. Betar, the public administrator was appointed administrator *de bonis non*; and Raines and Maryland were directed to file a final account within two weeks. Again, no mention was made in this order of Maryland's October 15, 1976, petition. Raines was not present during this proceeding. On December 16, 1976, the court gave Raines leave to present a petition to vacate the order of December 6, 1976, and the rule to show cause why Raines should not be adjudged in contempt of court was continued to January 13, 1977. Continuances were again allowed on a monthly basis until August 18, 1977.

On July 1, the trial court granted Raines leave to file her petition in lieu of final account. That order was drafted by attorneys for Maryland and the petition was actually filed by Maryland as surety. The petition stated in part that: the assets of the estate were stolen piecemeal by parties unknown; Raines expended various estate funds attempting to ascertain knowledge of the alleged thefts and to obtain insurance on the remaining assets; Raines' books and records were also stolen; T. Michael Bates, a public accountant, had prepared a summary of principal account and a statement of cash receipts and disbursements for the estate, attached as an exhibit; and neither Raines nor Maryland was able to prepare with accuracy a final account reflecting receipts and disbursements due to the aforementioned theft. Maryland prayed that the court approve the petition in lieu of final account as the final account. Among the debts and expenses shown by the public accountant were a hospital bill for $3,210; legal fees for $1,200; and accounting fees for $375. All the foregoing were shown separately from a statement of cash receipts and disbursements of the business from May 1, 1973, to June 30, 1974, offsetting each other at $36,811.97 and ending with a zero balance.

Objections to the final account were filed by the guardian ad litem, Shea, claiming mismanagement of the estate and questioning certain

disbursements. An answer to objections was filed by Maryland, generally moving to strike the allegations questioning disbursements. Hearing on the petition was set for August 12, 1977, but was continued a number of times until June 28, 1979. In the meantime, Julia Raines was arrested and released on a body attachment. A new public administrator, David Rallo, was appointed on June 8, 1978. On August 17, 1978, the court allowed Rallo 28 days to file objections to the petition in lieu of final account filed by Maryland. The objections, filed September 14, 1978, alleged waste and mismanagement by Raines, and prayed that Raines be found guilty of waste, that the petition in lieu of final account be rejected, and that a judgment be entered against Maryland for the amount of the bond. Maryland denied the allegations. More continuances followed.

On June 28, 1979, counsel appeared to argue the merits of Maryland's petition in lieu of final account. Raines failed to appear in person or by counsel. The court found that Raines had filed an inventory setting forth the value of the personal property at $19,431.27 and that no accounting had been filed with the court since that inventory, as required by statute. The court ordered that the petition in lieu of final account filed by Maryland be stricken, that an account be stated on behalf of Raines in the sum of $19,431.27, and ordered Raines to turn over to Rallo $19,431.27 within 14 days of the order.

On July 25, 1979, Maryland filed a motion to vacate the order of June 28, 1979, alleging, *inter alia*, that the subject order did not give Raines credit for setoffs to which she was entitled. Shea filed his response to Maryland's motion on August 7, 1978, alleging that: Raines had not filed one accounting in the six elapsed years; Maryland had not been able to bring Raines before the court and substantiate the petition in the three years it had sought to do so; the petition was properly stricken since Raines, in a sense, was defaulted; and it was Maryland's obligation to assure Raines' appearance. On August 15, 1979, Rallo filed his response to Maryland's motion, alleging, among other things, that Raines never pleaded a right to credit for setoffs, and her entitlement to them is a mere conclusion. On August 31, 1979, Maryland filed an amendment to its motion to vacate. In the amendment, it was alleged that during a conference with Raines, information had been obtained with which to prepare a final account. Attached to the amendment was the putative final account, together with Raines' signed voucher showing her receipt of goods and chattels in full payment of her surviving spouse's award in the amount of $5,000; and an attorney's voucher, signed by M. C. Elden, showing direct payment of $2,489.25 to the University of Chicago, ostensibly referring to the hospital expense claim.

On September 5, 1979, Raines filed a petition to vacate the court's order of April 22, 1976, removing her as administrator. The petition also

requested removal of Rallo as administrator, her own reinstatement, and the removal of Shea as guardian ad litem. Attached to the petition was a proposed first and final account. In addition, she filed a section 72 petition to vacate the court's June 28, 1979, order, which petition is still pending below. On the same day, September 5, 1979, the court denied Maryland's motion to vacate the June 28, 1979, order and directed Maryland, as surety on Raines' bond, to pay Rallo $19,431.27. The court's order did not mention Raines' proposed first and final account filed that day.

On October 3, 1979, both Raines and Maryland filed notices of appeal from both the orders of June 28, 1979, and September 5, 1979.

■■ Before reaching the merits of this case we first address Rallo's contention that Raines' appeal should be dismissed since she did not file her notice of appeal within 30 days of entry of the order appealed from or entry of the order disposing of a timely post-trial motion, as required by Supreme Court Rule. (Ill. Rev. Stat. 1979, ch. 110A, par. 303(a).) Rallo argues that although Raines, by her October 3, 1979, notice of appeal, purports to appeal from the court's order of September 5, 1979 (denying her motion to vacate the June 28, 1979, order), that order in fact only denied Maryland's motion to vacate. Raines never filed a timely post-trial motion. Rallo contends that since Raines never filed a post-trial motion, and her notice of appeal was filed more than 30 days after the June 28, 1979, order, it was not timely filed. Rule 303(a), however, also provides that "[i]f a timely notice of appeal is filed and served by a party, any other party, within 10 days after service upon him or within 30 days after the entry of judgment, whichever is later, may join in the appeal * * *." Raines filed her notice of appeal within ten days of Maryland's filing, which satisfies the rule and precludes dismissal of her appeal.

Maryland and Raines filed a joint brief and sometimes will hereinafter be referred to as "appellants." They first contend that the court improperly denied Maryland, as surety, an opportunity to file an account on behalf of the removed representative, Raines, in striking Maryland's petition on June 28, 1979, and stating its own account. They rely on section 24—14 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 24—14) (the Act), which provides that "[i]f the letters issued to a representative are revoked and he fails or refuses to file an account within the time fixed by the court, the surety on his bond may present an account on his behalf." Appellants further argue that Maryland's account was stricken because the court held Maryland responsible for failing to secure Raines' appearance at the hearing, pointing to Shea's response to Maryland's motion to vacate the June 28, 1979, order, in which that argument was presented, in addition to citing the court's repeated insistence on Raines' presence at the rule to show cause hearing.

Rallo counters that, although Maryland had many opportunities to

file a final account, it never did so. Shea maintains that while the petition filed by Maryland on July 1, 1977 clearly satisfied section 24—14, Maryland never fulfilled the burden of proof placed upon an administrator when objections are filed to an account, citing *In re Estate of Roth* (1974), 24 Ill. App. 3d 412, 321 N.E.2d 81; *In re Estate of German* (1908), 144 Ill. App. 109, *aff'd* (1909), 239 Ill. 450, 88 N.E. 228.

■■ Examination of the petition in lieu of a final account filed by Maryland reveals first that it was not verified as required of an account. (Ill. Rev. Stat. 1977, ch. 110½, par. 24—1.) Next, paragraph 10 thereof states that neither Maryland nor Raines had sufficiently accurate information to allow a preparation of a final account. Maryland's petition in lieu of a final account was supplanted by Raines' attempted filing of a proposed final account contained in Maryland's amended motion to vacate, filed on August 31, 1979, some two months after the court's stated account. Raines' proposed final account created further confusion in an already disordered proceeding, particularly since it also requested that the court accept the inventory attached, which indicated the estate had been totally dissipated and included various disbursements, and was verified as the final account. Under these circumstances, the court was within its authority to reject the proffered petition in lieu of final account.

■■ A court has the right and duty, under prescribed circumstances, to state its own account, pursuant to section 24—15 of the Act (Ill. Rev. Stat. 1977, ch. 110½, par. 24—15); however, when it does so, it must make a diligent effort to ascertain, at least from its own orders and from other evidentiary documents in the court file, whether or not disbursements were previously made. In the instant case, as pointed out by appellants, the court relied completely on the inventory filed on October 26, 1973, in stating its account on June 28, 1979. On this record it appears that the court completely ignored or overlooked its own approval of Raines' surviving spouse award of $5,000 on May 6, 1976, which she elected to fulfill by taking a crane and two trucks in lieu of a cash payment. Yet, no such disbursal is shown in the court's account. In another instance, an order entered on October 8, 1974, awarded attorney's fees to Donald J. Brooks, Ltd., in the amount of $400, plus costs in the amount of $159, upon being granted leave to withdraw as attorney for the administrator. Other legitimate disbursements may also have been made over the six-year period from the filing of the initial inventory on October 26, 1973, until the court's account of June 28, 1979.

■■ Rallo and Shea maintain that the inventory nevertheless was properly considered by the court, citing section 14—3 of the Act (Ill. Rev. Stat. 1977, ch. 110½, par. 14—3), which provides that inventories may be given in evidence in any suit by or against the representative but are not conclusive for or against him if other evidence is given that the estate was

worth more or less than its appraised value. They claim that in the absence of other evidence properly before the court, it was justified in using the 1973 inventory in stating its account. The disbursals to which we have alluded, however, contradict that claim. An inventory such as that first filed in the present case merely shows what property the decedent owned at death. (See *Bailey v. Robison* (1908), 233 Ill. 614, 619, 84 N.E. 660; *Telpner v. Hogan* (1974), 17 Ill. App. 3d 152, 308 N.E.2d 7.) It is not conclusive as to disbursements that have been made by the representative of the estate, or setoffs that may be proper in stating an account where, as here, the record itself demonstrates their existence.

■■ Rallo and Shea argue that where objections are filed to a final account, as in the case at bar, it is the representative's burden to prove disbursements which have not been allowed by the court, relying on *Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 29 N.E.2d 251; and *Whittemore v. Coleman.* They urge that Maryland did not meet this burden when it filed its petition. This rule clearly does not apply to disbursements and allowances which have been approved by the court, as in the examples of the surviving spouse award of $5,000, and the attorney's fees and costs. Yet, as Raines and Maryland point out, these awards were disregarded by the court when it stated its account. The trial court's lapse in this regard rebuts the presumption in favor of its ruling (see *Emerick v. Hileman* (1897), 71 Ill. App. 512, *aff'd* (1898), 177 Ill. 368, 52 N.E. 311), and permits an inference that other legitimate disbursements may have been made.

■■ A judgment restating an administrator's account and allowing him charges against the estate without proper foundation in fact will be reversed and remanded for rehearing (*In re Estate of Kinsey* (1931), 261 Ill. App. 481); so too must such a judgment be reversed when it fails to state allowable charges against the estate.

■■ Maryland raises as an issue for the first time in this litigation on appeal, that a surviving child's award of $7,000 was made by the trial court which should have further reduced the inventory by that amount. An administrator in 1973 would first have had to apply to the court for such an award under section 178(d) of the Act (Ill. Rev. Stat. 1973, ch. 3, par. 178(d)). Maryland has not invited our attention to any such application in the record, nor to any order of court authorizing such an award. Maryland cites *In re Estate of Buehnemann* (1975), 25 Ill. App. 3d 1003, 324 N.E.2d 97, and *In re Estate of Gersch* (1963), 43 Ill. App. 2d 224, 193 N.E.2d 208, for the proposition that this kind of award is automatic; however, the appellate court in *Buehnemann* merely held that absent a conviction for murder or involuntary manslaughter, a surviving spouse award, *for which a petition is properly filed,* is automatic and not barred by the Act; in *Gersch*, the administrator filed a surviving spouse petition

seeking the award. To hold otherwise would render the statutory authority vested in the court to determine the reasonableness of the request a nullity. No petition for any surviving child's award having been filed in the present case, none could have been approved, automatically or otherwise, and none can be considered as a setoff against the estate inventory.

The long-delayed, tortuous, confusing, duplicative and obstructive course traversed by the instant estate hardly comports with the intended speed and finality contemplated in the rules governing the administration of estates provided by the Act (Ill. Rev. Stat. 1977, ch. 110½, par. 1—9), toward the end that estates may be settled and closed promptly, properly and equitably. Recognizing that much of the delay and obfuscation is attributable to the refusal or incapacity of the initial administrator to perform even the most fundamental function of her office, the extended number of continuances allowed here, as in other litigation, also significantly contributed to the excessive inertia evident in this matter. Petitions were filed before a number of different courts, and, at times, orders were entered by those courts without sufficient consideration of predecessor orders. Many of these orders were entered by courts other than the one from which this appeal is taken. Minors' interests being involved here particularly demand more expeditious determinations of the issues raised than has heretofore emerged. Upon reversal and remand, it is assumed that such will be the modus operandi in terminating this estate.

Reversed and remanded for further proceedings with directions to reopen the court's account and reconsider pertinent disbursements or setoffs applicable thereto.

Reversed and remanded with directions.

PERLIN, P. J., and DOWNING, J., concur.